James E. EBENHOH,
et al., Appellants,

v.

Frank J. HODGMAN, et
al., Respondents.

No. C4–01–1439.

Court of Appeals of Minnesota.

April 23, 2002.

Steven J. Hovey, Hoversten, Johnson, Beckmann & Hovey, Austin, for appellants.

Brian L. Weber, Weber Law Offices, Dodge Center, for respondents.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellants James and Carma Ebenhoh brought a district court action against respondents claiming ownership of a disputed tract of property through adverse pos-

session and boundary by practical location. The district court concluded that appellants failed to show exclusive, continuous, and hostile use of the disputed tract and therefore did not satisfy the elements of adverse possession. Likewise, the district court concluded that respondents did not sufficiently acquiesce to a fence line and therefore appellants failed to establish a boundary by practical location. We reverse and remand.

## FACTS

In 1942, Richard and Alma Tincher owned an 80–acre parcel of farmland in Dodge County. On the same day in 1942, the Tinchers deeded the north 40 acres (Hodgman parcel) to LeRoyal Sanders (Sanders), and the south 40 acres (Ebenhoh parcel) to Edward Ebenhoh, father of appellant James Ebenhoh (Ebenhoh). That same year, Ebenhoh's father constructed an east-west fence, made of steel and wood posts and barbed wire, dividing the two parcels. It is unclear why Ebenhoh's father constructed the fence.

Ebenhoh testified that between 1942 and 1955 his father repaired the fence every year to ensure that the cattle that grazed on the Ebenhoh parcel, after the crops were harvested, would not stray. In 1956, the cattle operation ceased. After 1956, however, Ebenhoh and his father continued to farm the Ebenhoh parcel. Ebenhoh testified that they would plant crops close to the fence, probably within a foot of the fence line where possible.

On February 6, 1968, Ebenhoh purchased the Ebenhoh parcel from his father. Between 1969 and 1984, Ebenhoh continued to farm the Ebenhoh parcel in the same manner by planting crops close to the fence line. In 1985, Ebenhoh experienced financial difficulties and leased the Ebenhoh parcel to respondent Frank Hodgman and another individual. Be-

tween 1986 and 1996, Ebenhoh leased the Ebenhoh parcel to a canning company, which cultivated asparagus. Since 1996, Ebenhoh's son-in-law has leased the Ebenhoh parcel, and continues to farm the property.

Respondent Frank Hodgman testified that he purchased the Hodgman parcel from his parents in 1976, who had purchased the property from Sanders in 1955. He also testified that he sold the Hodgman parcel to his brother, respondent Donald Hodgman, in 1993.

A surveyor testified that respondent Donald Hodgman retained him in 1993 to survey the Hodgman parcel (1993 survey). The surveyor testified that the 1942 fence line was located approximately 11 feet north of the "true" boundary line dividing the two parcels. Appellants concede that the 1993 survey correctly locates the true boundary line between the two parcels.

In August 2000, appellants brought a district court action to establish the boundary between the two parcels. Ebenhoh alleged that the 1942 fence line constituted the boundary between the two parcels and that he, his father, and his lessees, have adversely possessed the disputed tract for the 15–year statutory period. Ebenhoh also alleged that the fence line constituted a boundary by practical location.

The district court concluded that although Ebenhoh showed that he openly and actually used the disputed tract for 15 years, he failed to show that his use was exclusive, continuous, or hostile. The court also concluded that Ebenhoh failed to show that the fence line constituted a boundary by practical location. This appeal followed.

## ISSUE

Are appellants entitled to the disputed tract through adverse possession?

## ANALYSIS

 Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn. R. Civ. P. 52.01; *see also Grubb v. State,* 433 N.W.2d 915, 917 (Minn.App. 1988), *review denied* (Minn. Feb. 22, 1989). In boundary-line cases, the findings of the district court will not be disturbed unless "the evidence taken as a whole furnishes no substantial support for them or where it is manifestly or palpably contrary to the findings." *Engquist v. Wirtjes,* 243 Minn. 502, 506, 68 N.W.2d 412, 416 (1955) (quotation omitted). But whether the findings of fact support a district court's conclusions of law and judgment is a question of law, which we review de novo. *Donovan v. Dixon,* 261 Minn. 455, 460, 113 N.W.2d 432, 435 (1962) (noting that "it is for this court to determine whether the findings support the conclusions of law and the judgment").

 Before title through adverse possession can be established, there must be clear and convincing evidence of actual, open, hostile, continuous, and exclusive possession by the alleged disseizor for the statutory 15 year period. *Engquist,* 243 Minn. at 504, 68 N.W.2d at 415; *see also* Minn.Stat. § 541.02 (2000). Evidence tending to establish adverse possession must be strictly construed, "without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Village of Newport v. Taylor,* 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948); *see also Stanard v. Urban,* 453 N.W.2d 733, 735 (Minn. App.1990) ("The evidence must * * * amount to clear and positive proof before title by adverse possession will be grant-ed." (citation omitted)), *review denied* (Minn. June 15, 1990).

[T]he erection of a fence by an adjoining landowner has little significance on the issue of adverse possession unless the disseizor uses and occupies the land up to the line established by the fence.

*Engquist,* 243 Minn. at 505, 68 N.W.2d at 415 (citation omitted).

Appellants argue the district court erred as a matter of law when it concluded that Ebenhoh's use of the disputed tract was not exclusive, continuous, or hostile. Respondents do not challenge the district court's conclusions that Ebenhoh's use of the disputed tract was both actual and open; therefore, our review is limited to whether Ebenhoh's use of the disputed tract constituted, as a matter of law, exclusive, continuous, and hostile use of the disputed tract for the statutory 15–year period.

We conclude the district court erred as a matter of law when it concluded that Ebenhoh did not establish, by clear and convincing evidence, exclusive, continuous, and hostile use of the disputed tract for 15 years.

### A. Exclusivity

 The exclusivity requirement is met if the disseizor takes "possession of the land as if it were his own with the intention of using it to the exclusion of others." *Wheeler v. Newman,* 394 N.W.2d 620, 623 (Minn.App.1986) (citing *Thomas v. Mrkonich,* 247 Minn. 481, 484, 78 N.W.2d 386, 388 (1956)).

The district court found that respondents and other parties "continued to use the disputed area for hunting and fishing purposes throughout the years." Consequently, the district court concluded that Ebenhoh did not exclusively use the disputed tract for the statutory period.

The district court's factual finding that respondents and other third parties used the disputed tract for hunting and fishing is clearly erroneous. There is nothing in the record that suggests the disputed tract was ever used for hunting and fishing. Respondents agree. Respondents, however, argue that there is other evidence in the record that suggests Ebenhoh's use of the disputed tract was not exclusive: (1) respondents' father, Ralph Hodgman, briefly entered the area in 1964 to straighten a creek that meandered near the fence line; and (2) the parties assisted each other with their respective farm operations.

The record, however, is clear that Ebenhoh, his father, and his lessees were the only individuals to use the disputed tract, save for the brief and insubstantial entries onto the property referenced by respondents. Ebenhoh testified that between 1942 and 1956 the fence prevented cattle from leaving the Ebenhoh parcel. It is also undisputed that for 30 years, between 1956 and 1986, Ebenhoh, his father, or his lessees planted crops as close as possible to the fence line.[1] Respondent Frank Hodgman testified that during his ownership of the Hodgman parcel between 1976 and 1993 he *never* used the property abutting the fence line. It is also undisputed that it was not until 1998, 56 years after the fence was constructed, that respondent Donald Hodgman placed white flags in Ebenhoh's soybean field marking the 1993 survey line.

There is simply no evidence in the record that the disputed tract was used, save for a few intermittent entries, by anybody but Ebenhoh, his father, and his lessees.

Therefore, the district court's finding of fact that the tract was used for hunting and fishing is clearly erroneous. Moreover, the court's conclusion of law that Ebenhoh did not exclusively use the disputed tract for the statutory period was also erroneous and appellants have established, as a matter of law, that they exclusively used the disputed tract for the statutory period.

### B. Continuity

 Adverse possession for any consecutive 15 year period is sufficient to establish continuity of use, *Kelley v. Green*, 142 Minn. 82, 84, 170 N.W. 922, 923 (1919), and the statutory period must only be completed before bringing an adverse-possession action. *Dean v. Goddard*, 55 Minn. 290, 293–94, 56 N.W. 1060, 1061 (1893). "The possession of successive occupants, if there is privity between them, may be tacked to make adverse possession for the requisite period." *Fredericksen v. Henke*, 167 Minn. 356, 360, 209 N.W. 257, 259 (1926). "The possession of a tenant is, as to third parties, the possession of the landlord." *Kelley*, 142 Minn. at 85, 170 N.W. at 923; *see also Sherin v. Brackett*, 36 Minn. 152, 154, 30 N.W. 551, 552 (1886) (stating that "the tenant's possession is that of his landlord" (citation omitted)).

 The district court found that the canning company used most of the Ebenhoh parcel to cultivate asparagus between 1986 and 1996; the court also found that the canning company did not cultivate asparagus on the disputed tract, but rather used the disputed tract to move its machinery in and out of the field. The district court therefore concluded that the

---

1. Ebenhoh's son-in-law also testified that between 1982 and 1985, when he worked as a "hired man," he and Ebenhoh would farm "as close as possible * * * one to three to five feet" from the fence line. He also testified that he would periodically mow along the fence line to keep the weeds down when the canning company occupied the Ebenhoh parcel between 1986 and 1996.

canning company's use of the disputed tract between 1986 and 1996 constituted occasional, not continuous, use.

The district court's findings of fact are not clearly erroneous. But the district court erred in its conclusion of law. Even if we were to accept the district court's highly questionable conclusion that the canning company's use of the disputed tract to move its machinery in and out of the Ebenhoh parcel did not constitute sufficient continuous use of the disputed tract between 1986 and 1996, the canning company's use of the disputed tract during that period is irrelevant. Ebenhoh's father cultivated crops and grazed cattle on the disputed tract between 1942 and 1956. Ebenhoh, his father, and his lessees cultivated crops, up to the fence line, between 1956 and 1986. By the time the canning company leased the Ebenhoh parcel in 1986, Ebenhoh, his father, and his lessees, had used the disputed tract continuously for 44 years.

Therefore, the district court erred as a matter of law when it concluded that ap-

pellants failed to establish continuous use of the disputed tract for the statutory period.

## C. Hostility

While it is true that assertion of adverse title need not be always expressly or affirmatively declared, but may be shown by circumstances, proof of inception of hostility must in all cases be clear and unequivocal. *Johnson v. Raddohl*, 226 Minn. 343, 345, 32 N.W.2d 860, 861–62 (1948) (citations omitted).[2] The hostility requirement "does not refer to personal animosity or physical overt acts against the record owner of the property." *Ehle v. Prosser*, 293 Minn. 183, 190, 197 N.W.2d 458, 462 (1972). To establish hostility of use, the disseizor must "enter and take possession of the lands as if they were his own * * * with the intention of holding for himself to the exclusion of all others." *Thomas*, 247 Minn. at 484, 78 N.W.2d at 388 (quotation omitted). Hostility is flexibly determined by examining "the character of the posses-

---

**2.** It is well-established in Minnesota that a party claiming an easement through prescription may benefit from a rebuttable presumption of hostility if she shows actual, open, continuous, and exclusive use of the easement. This presumption may be rebutted if the servient owner shows that the claiming party's use was permissive. *E.g., Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn.2000); *Nordin v. Kuno*, 287 N.W.2d 923, 926 (Minn. 1980); *Burns v. Plachecki*, 301 Minn. 445, 448, 223 N.W.2d 133, 135–36 (1974); *Alstad v. Boyer*, 228 Minn. 307, 310, 37 N.W.2d 372, 375 (1949); *Dozier v. Krmpotich*, 227 Minn. 503, 507, 35 N.W.2d 696, 699 (1949); *Stapf v. Wobbrock*, 171 Minn. 358, 360, 214 N.W. 49, 50 (1927).

The supreme court, moreover, has at least implicitly suggested that this presumption applies in adverse-possession cases. *Boldt*, 618 N.W.2d at 396 ("A prescriptive easement claim involves the same elements of proof as an adverse possession claim, subject to the inherent differences between such claims.");

*Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999); *Alstad*, 228 Minn. at 311, 37 N.W.2d at 375 (noting in dictum that a rebuttable presumption of hostility may aid an adverse-possession claimant unless the claimant is merely using the presumption to show actual or continuous use). The supreme court's suggestion in *Alstad* is in accord with general adverse-possession law:

> Once it is established that the use is actual, notorious, exclusive, and continuous, a presumption is established that the use was hostile, and it is the burden of the party opposing the prescriptive right to show that the use was permissive.

16 Richard R. Powell, *Powell on Real Property* § 91.02, at 91–13 (Patrick J. Rohan ed.1999). Appellants do not contend that they are entitled to a rebuttable presumption of hostility. Therefore, due to the considerable uncertainty in this area of Minnesota adverse-possession law, we decline to apply the presumption in this case.

sion and the acts of ownership of the occupant." *Carpenter v. Coles,* 75 Minn. 9, 11, 77 N.W. 424, 424 (1898); *Fredericksen,* 167 Minn. at 359, 209 N.W. at 258 ("Adverse or hostile intent may be inferred from the character of possession." (citations omitted)).

■ Nevertheless, this general rule is tempered when a close family relationship exists between the record owner of the property and the alleged disseizor:

[T]he existence of a close family relationship between the claimant of land and the record owner * * * create[s] the inference, if not the presumption, that the original possession by the claimant of the other's land was permissive and not adverse and that when such original use was thus permissive it would be presumed to continue as permissive, rather than hostile, until the contrary was affirmatively shown.

*Norgong v. Whitehead,* 225 Minn. 379, 383, 31 N.W.2d 267, 269 (1948) (siblings) (citations omitted); *see also Wojahn v. Johnson,* 297 N.W.2d 298, 306 (Minn.1980) (siblings).

■ The district court recognized that it is unclear why Ebenhoh's father constructed the 1942 fence; therefore, according to the court, any speculation about the purpose of the fence did not constitute clear and convincing evidence that Ebenhoh's father made a hostile claim to the disputed tract in 1942. The district court found that the Hodgmans and Ebenhohs were part of a close family that regularly socialized together; indeed, it is undisputed that the parties are first cousins who periodically assisted each other with their respective farming operations. Ebenhoh's father lent his brother-in-law, respondents' father, money without demanding security. Because of this familial relationship, the district court concluded that the relationship created a presumption that Ebenhoh's possession of the disputed tract from 1955 until the present was permissive, and not hostile.

The district court's findings of fact are not clearly erroneous. The district court, however, erred as a matter of law when it concluded that Ebenhoh's possession of the disputed tract was not hostile.

Even though Sanders and Ebenhoh's father are deceased, and thus cannot explain why the fence was constructed or whether the use of the disputed tract was originally permissive,[3] that does not mean that Ebenhoh's father's undisputed use of the tract to cultivate crops and graze cattle between 1942 and 1956 is not relevant in determining hostility of use. Such logic could lead to an absurd legal rule where undisputed actual, open, continuous, and exclusive use of property for multiple decades could not result in adverse possession of that property because the original use of the property *may* have been permissive.[4] It is also undisputed that after 1956 Ebenhoh, his father, and his lessees, continued to farm the disputed tract, as close as possible to

---

**3.** *See Lechner v. Adelman,* 369 N.W.2d 331, 334 (Minn.App.1985) (" 'Permission' denotes the owner's grant of permission in fact, rather than mere acquiescence or failure to assert paramount rights." (citation omitted)), *review denied* (Minn. Aug. 29, 1985).

**4.** Respondents allege that if it is unclear why a fence was constructed or whether the fence was intended as a boundary, "Permission at the inception, therefore, would be presumed."

(citing *Weis v. Kozak,* 410 N.W.2d 903 (Minn. App.1987)). This statement misconstrues this court's holding in *Weis.* In *Weis,* this court recognized that the parties expressly agreed to leave a fence where it was located even though the parties both understood that it was incorrectly placed and did not constitute the true boundary between the properties. *Weis,* 410 N.W.2d at 906. Such direct evidence of permission is not present here.

the fence line, until at least 1998 when Ebenhoh's son-in-law began to honor the 1993 survey line.

Therefore, Ebenhoh's use of the disputed tract was hostile, in the sense that Ebenhoh and his father entered the disputed tract and took possession as if the tract was their own since 1942, with the intention of holding the tract to the exclusion of all others. The district court implied this conclusion when it concluded that Ebenhoh's use of the disputed tract was "open": "Th[e] fence gave the Hodgmans notice that the Ebenhohs were *claiming [the] land as theirs* and were using it in an actual and open manner for farming purposes." Moreover, because this hostility commenced when Sanders, who was unrelated to Ebenhoh's father, owned the Hodgman parcel, it should not be presumed that Ebenhoh's father's original use of the disputed tract was permissive.

We also note that respondents advance no authority for the hypothetical proposition that a transfer of property to a close family member of an adjoining property owner renders permissive that adjoining property owner's otherwise hostile use of property. Respondents' father, their predecessor-in-interest, should have been on notice that Ebenhoh's father used the disputed tract to cultivate crops and graze his cattle when he purchased the Hodgman parcel from Sanders in 1955. The mere fact that respondents' father purchased property near a relative neither converted well-established hostile use of the disputed property to non-hostile use, nor does such a purchase toll the statutory period.

Finally, because we conclude that appellants have established, as a matter of law, that they adversely possessed the disputed tract for the 15–year statutory period, we decline to decide whether the fence line constituted a boundary by practical location.

We therefore reverse and remand this case to the district court. We direct the district court to enter judgment in favor of appellants and to enter an order establishing the boundary between the two parcels as the 1942 fence line identified by the 1993 survey.

## DECISION

The district court erred, as a matter of law, when it concluded that appellants' use of the disputed tract was not exclusive, continuous, and hostile. Appellants' use of the disputed tract was exclusive because Ebenhoh, his father, and his lessees were the only individuals that used the disputed tract save for a few intermittent entries onto the property. Appellants' use of the disputed tract was continuous because Ebenhoh and his father cultivated crops and grazed cattle on the disputed tract for 44 years before the canning company took possession. Finally, appellants' use of the disputed tract was hostile because the property was used for the benefit of appellants and appellants' predecessor-in-interest and to the exclusion of others. Even though Ebenhoh's father's use of the disputed tract may have been originally permissive, this uncertainty does not detract from the fact that Ebenhoh, his father, and his lessees openly, actually, exclusively, and continuously used the disputed tract in a hostile manner for 56 years.

Reversed and remanded.