In the Matter of the Application of Linda B. GANJE and Michael J. Ganje, as joint tenants to Register the Title of Certain Land,

v.

In the Matter of the Application of Charles S. SCHULER and Susan M. Schuler, husband and wife, as joint tenants to Register the Title of Certain Land.

No. C4-02-1497.

Court of Appeals of Minnesota.

April 8, 2003.

Steven K. Champlin, Scott E. Stevens, Dorsey & Whitney L.L.P., Minneapolis, for appellants Linda and Michael Ganje.

Ralph H. Tully, St. Louis Park, and John D. Hagen, Jr., Minneapolis, for respondents Charles and Susan Schuler.

Considered and decided by SCHUMACHER, Presiding Judge, WILLIS, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellants challenge the district court's adoption of the findings of the Hennepin County Examiner of Titles that respondents proved, by clear and convincing evidence, acquisition of title to a portion of appellants' property by adverse possession. Appellants also allege that the district court erred by classifying the present action as a boundary-line dispute, which would exempt respondents from the requirement that they pay assessed real-estate taxes on the disputed property for at least five years. Because the district court's findings were supported by the record and were not clearly erroneous, we affirm.

## FACTS

Appellants Michael and Linda Ganje live on a Bloomington lot (Ganje parcel) immediately to the west of respondents Charles and Susan Schuler. The parties share a common boundary. The strip of land at issue here is located along that common boundary and is several hundred feet in length. Except for a driveway and main-

tained lawn area, the disputed property is mostly unimproved, wooded land. For ease of analysis, the Hennepin County Examiner of Titles (the examiner) divided the disputed property into five parts, running from south to north: (1) the dog pen, (2) the area next to respondents' house, (3) the driveway and "area of well maintained lawn," (4) the woods, and (5) the right-of-way of Auto Club Road.

Respondents purchased their land (Schuler parcel) in 1969 and built a house on the property in 1972. At the time of the construction of their house, the septic system extended westward onto land respondents believed to be part of their lot, but which, in fact, was across their lot line. Respondents' driveway and lawn also extended across the western boundary line, but no one noticed this at the time.

Thomas and Freya Pope lived on the Ganje parcel from 1983 to 1993. Thomas Pope testified that he was aware in 1983 that there was a discrepancy between the legal and actual boundaries of the Ganje parcel. In 1987, the Popes commissioned a survey of the Ganje parcel that determined that respondents' dog-pen fence encroached on their property. Pope testified that he discussed the removal of the fencing with Charles Schuler, but respondents never took the fence down. Pope also testified that respondents were concerned about their septic system, which lies partly under the dog pen and, thus, on the Ganje parcel.

Freya Pope testified that during the ten years the Popes lived on the Ganje parcel they engaged in the following activities in the disputed property area: (1) maintained a row of lilacs and cleaned brush, (2) harvested wild flowers from the woods, (3) the Pope children played in the woods, (4) retrieved wood from the wooded area, and (5) picked crab apples. Freya Pope also testified that other than the well-maintained lawn area, she only saw respondents use the disputed property to take out brush or wood a few times.

At the hearing before the examiner, respondents offered the following evidence of their use of the disputed property and argued that these actions were sufficient to acquire title to the disputed areas by adverse possession:

(1) *Dog pen*—Respondents constructed a wire-fence dog pen in 1973 where they thought their western boundary line was located. The location of the fence was never changed and is still in place today. Also, respondents cut, trimmed, and planted trees; raised cantaloupe and raspberries; put down wood chips; and ran their septic-tank system under the fenced-in area.

(2) *Area next to respondents' house*—Respondents and the Popes planted shrubs, trees, and flowers; built a pathway; put down wood chips every two years; maintained a compost box; hired professional tree trimmers to maintain large maple trees; and pruned and cut their side of a hedge of lilac bushes.

(3) *Driveway and "area of well-maintained lawn"*[1]—Appellants do not dispute that respondents maintained the driveway, mowed the lawn, and exclusively occupied this area since 1970.

(4) *The woods*—Respondents took out dead trees, branches, and grape vines; hauled brush away for disposal; and operated a wood chipper on this portion of the disputed property.

1. The "area of well-maintained lawn" refers to a grassy area of respondents' yard that they took care of over the years as a part of their own lawn.

(5) *Auto Club Road right-of-way*—Respondents mowed, raked, fertilized, seeded, watered, and cut brush in this area near the boulevard.

Appellants challenged the extent of respondents' alleged activities in the disputed area during the hearing and claimed that, over a period of 20 years, respondents' accumulated actions did not meet the adverse-possession requirements. Appellants testified that they also made use of the disputed property, including dumping leaves there in the fall, hiring a tree service to cut tree limbs, and planting in the area. Linda Ganje also testified that in the disputed property area, she (1) sprayed for weeds and fertilized, (2) trimmed along the sidewalk, (3) removed brush in the wooded area, (4) pruned the lilacs, (5) removed bramble bushes, and (6) planted wildflowers. She stated that while doing these activities, she never noticed respondents engaged in any activities on the disputed property other than near the well-maintained lawn area and the driveway. Michael Ganje testified that he hardly ever saw respondents make use of the disputed property and that no physical evidence existed that identified respondents' use of the area (other than the driveway, well-maintained lawn area, and the fenced dog pen).

In 1995, appellants bought the Ganje parcel and were informed that respondents' driveway encroached on the property. In 1998, appellants asserted ownership rights to the disputed property and offered respondents an easement agreement to allow respondents to continue us-

ing the driveway and lawn area. Respondents refused to sign the easement agreement.

Both parties filed applications to register their land pursuant to Minn.Stat. ch. 508 (2002). Appellants claimed title based on the warranty deed executed between them and their predecessors in interest, Thomas and Georgette Michelitti, dated November 29, 1995.[2] Respondents' application listed the disputed property as a separate parcel that they claimed title to by adverse possession.

On November 27, 2000, the district court referred the matter to the examiner pursuant to Minn.Stat. § 508.20 (2002) and Minn. R. Civ. P. 53.05. Appellants opposed respondents' application, arguing that respondents failed to satisfy the adverse-possession requirements and that respondents were not entitled to the benefits of the adverse-possession statute because they did not pay the taxes on the disputed property.[3]

The examiner concluded that respondents' claims regarding the Auto Club Road right-of-way area, part of the dog pen, and part of the woods were not proven. The examiner also ruled that respondents had satisfied the requirements of adverse possession with respect to the rest of the dog-pen area, the part next to respondents' house, and the rest of the woods. The examiner recommended the district court enter an order (1) allowing respondents to proceed with a Torrens application that included the portion of the disputed property for which the examiner had determined that adverse possession

2. Thomas and Georgette Michelitti purchased the Ganje parcel from Thomas and Freya Pope in 1993.

3. With regard to the driveway and the well-maintained lawn area, respondents proved the elements of adverse possession, and appellants have always agreed that respondents

could have a permanent easement on that portion of their property. The parties stipulated that respondents never paid the real-estate taxes due for the Ganje parcel, including the portion of that property that they now claim to own by adverse possession.

had been shown, and (2) dismissing appellants' application with respect to that land.

Upon motion by respondents, the district court adopted the examiner's report on July 17, 2002. This appeal followed.

## ISSUES

I. Did the district court err by concluding that respondents, by adverse possession, acquired part of a disputed property from appellants?

II. Did the district court correctly hold that this matter is a boundary-line dispute and thus respondents were not required to pay real-estate taxes on the disputed property?

## ANALYSIS

The district court's findings of fact "shall not be set aside unless clearly erroneous." Minn. R. Civ. P. 52.01. "The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court." *Id.* "But whether the findings of fact support a district court's conclusions of law and judgment is a question of law, which we review de novo." *Ebenhoh v. Hodgman,* 642 N.W.2d 104, 108 (Minn. App.2002).

### I.

■ The district court adopted the examiner's recommendation that respondents acquired title to a portion of the disputed property by adverse possession. Whether the adverse possession elements have been established is a question of fact. *Wortman v. Siedow,* 173 Minn. 145, 148, 216 N.W. 782, 783 (1927); *see also Denman v. Gans,* 607 N.W.2d 788, 793 (Minn.App. 2000) (holding that "the question of adverse possession is for the fact finder,

whether it be the jury or the court."), *review denied* (Minn. June 27, 2000).

■ To show adverse possession, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under our statute, is 15 years. *Ehle v. Prosser,* 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972). The evidence presented in support of adverse possession must be strictly construed, "without resort to any inference or presumption in favor of the disseizor, but with every presumption against him." *Ebenhoh,* 642 N.W.2d at 108 (quotation omitted). Intent to take the land is not necessary; an individual can gain title by adverse possession "even though the disseizor does not intend to take land not belonging to him so long as he does intend to exclude all others." *Ehle,* 293 Minn. at 189, 197 N.W.2d at 462.

Appellants argue that the district court erred as a matter of law when it concluded that respondents' use of the disputed property met all the adverse-possession requirements.[4]

### A. Actual and open possession

■ The law does not prescribe any particular manner by which an adverse possessor must possess a disputed tract of property. But the possession must give "unequivocal notice to the true owner that some one is in possession in hostility to his title." *Skala v. Lindbeck,* 171 Minn. 410, 413, 214 N.W. 271, 272 (1927). As one case put it, the disseizor must not only possess the property, he or she must make that fact known by keeping their "flag flying." *Romans v. Nadler,* 217 Minn. 174, 178, 14 N.W.2d 482, 485 (1944).

4. Appellants concede that respondents' use and maintenance of the driveway and well-maintained lawn area satisfied all the adverse-possession criteria.

Appellants argue that respondents' possession of portions of the disputed property was not actual and open and therefore did not put them on notice that respondents claimed the property adversely. Except for the dog-pen fence, appellants claim that respondents' alleged activities in the disputed property area were intermittent, screened from view by the woods, limited in duration, and left no clear evidence that they had even occurred.

The examiner found that respondents' use of the dog-pen area and property near respondents' house was visible and positively established.[5] As to the woods, the examiner concluded respondents proved adverse possession only as to a portion of that area.

█ The district court's adoption of the examiner's findings related to this issue is not clearly erroneous. To show possession, respondents need not have constructed tangible structures on the disputed property. It is sufficient if "visible and notorious acts of ownership have been continuously exercised over the land for the time limited by the statute." *Young v. Grieb*, 95 Minn. 396, 397, 104 N.W. 131, 131 (1905). The district court found that respondents' use of certain portions of the disputed property, and not others, was continuously exercised over the land sufficient to give notice to appellants. Nothing appellants have argued indicates that this finding was clear error. Respondents used the area near their house for planting various shrubs and flowers. Appellants did not contradict respondents' testimony regarding their use of that portion of the disputed property or the dog-pen area.

In addition, the district court was mindful of appellants' argument that respondents' use of the woods area was imperceptible. Accordingly, the district court held that respondents' failure to adequately demonstrate actual and open use of the entire woods area precluded an award of the whole woods and therefore awarded only particular parts of the woods. We cannot say, based on the record before us, that the district court erred by finding actual and open possession of a portion of the disputed property.

## B. Exclusivity

█ The exclusivity requirement of adverse possession is satisfied if the disseizor possesses "the land as if it were his own with the intention of using it to the exclusion of others." *Ebenhoh*, 642 N.W.2d at 108 (quotation omitted).

As to the woods, the examiner found that testimony submitted on behalf of appellants conflicted with respondents' claim of exclusive possession. In other words, respondents failed to establish that they exclusively used the woods for the statutory period.

As to the exclusivity analysis, appellants seem to disagree only with the examiner's decision to award part of the wooded area to respondents. Appellants claim that the wooded area between the two properties was used by both parties because both parties took wood from the area, transplanted wild flowers, trimmed the lilacs, allowed their children to play, and otherwise "took advantage of the opportunity provided by the area."

But the examiner's report makes clear that consideration was given to appellants' claims of multiple use by the parties and only those portions of the wooded area where respondents provided evidence of

5. As to the area next to respondents' house, the examiner found that respondents planted trees, shrubs, and bulbs and used the area near the large silver maple. This evidence was positively established and uncontroverted.

exclusive use were awarded to respondents. There was conflicting testimony regarding exclusivity as to this area in the examiner's report that the district court subsequently adopted. Based on the record before us, though, we cannot say that the district court clearly erred in its findings regarding respondents' exclusive use of the wooded areas that the court awarded to them.

## C. Continuous

 To acquire title by adverse possession requires continuity of use for a period of 15 years. *Id.* at 109. If the adverse possession is interrupted, the possession of the property reverts to the holder of the legal title. *Romans,* 217 Minn. at 178, 14 N.W.2d at 485.

The examiner found that respondents' possession of the different sections of the claimed property commenced at different times but that, as a whole, it began as early as 1969 and no later than 1974. Appellants assert that even if respondents' possession of all areas of the disputed property began as early as suggested, their sporadic use of the property was insufficient to be continuous for adverse-possession purposes. Specifically, appellants claim that "occasional plantings in the woods, spring clean up, pulling down vines, and trimming branches on a few occasions over many years" is too irregular to be considered continuous.

A bright-line test for how much activity constitutes continuous possession of a property for adverse-possession purposes does not exist. Instead, the rule of thumb used is that the disseizor must be using the property as his or her own, i.e., regularly and matched to the land's intended use. Under this standard, respondents' more sporadic use of the wooded area, as compared to the area near their house, is reasonable. Appellants did not show that respondents treated the wooded areas in the disputed property any differently from the wooded portions on respondents' own property.

In addition, the erection of a fence, the septic system running under the dog-pen area, and respondents' planting of shrubs and bulbs in the area near their home strongly suggests that the district court's conclusions were not erroneous. On a large suburban lot, these activities are consistent with those that owners of real estate would normally conduct on their own property. Finally, except for the wooded area, appellants failed to establish that respondents' possession of the disputed property was ever interrupted. The district court's conclusion that respondents could only continuously possess a portion of the woods is consistent with the facts presented at the hearing because both parties used the area. The district court's findings of fact are not clearly erroneous and the record supports its legal conclusions.

## D. Hostile

 The final element of adverse possession is that the possession must be hostile or with an intention to claim the property adverse to the true owner. *Id.* at 178, 14 N.W.2d at 485. The term hostility does not imply any type of "personal animosity or physical overt acts against the record owner." *Ehle,* 293 Minn. at 190, 197 N.W.2d at 462. Instead, hostility contemplates the disseizor entering and taking possession of the land as if it were the disseizor's and owning it with the intention of excluding all others. *Ebenhoh,* 642 N.W.2d at 110. "Hostility is flexibly determined by examining the character of the possession and the acts of ownership of the occupant." *Id.* at 110–111 (quotation omitted). Appellants assert that because respondents did not act to keep anyone out

of the disputed property, their possession was not hostile to appellants, the true owners.

As previously discussed, the record indicates that respondents treated the disputed property as their own. In addition, contrary to appellants' argument, Minnesota has never required the affirmative denial of the true owner's title by "no trespassing" signs. Although such signs might signal that the adverse-possession requirement of *openness* of possession was satisfied, there is no requirement under Minnesota law that mandates use of no trespassing signs.

Review of the testimony heard by the examiner is challenging because the hearing involved witnesses pointing to areas of activity on a detailed survey map. These fact-intensive adverse-possession determinations rely largely on the credibility of witnesses and the weight, if any, to be given to their testimony. Given the status of the record, we cannot say that any of the district court's findings relating to the adverse-possession requirements were clearly erroneous.

## II.

Appellants argue, in the alternative, that title has not vested in respondents, even if all adverse-possession elements were established, because respondents have not paid taxes on the disputed property. After setting out the 15 year adverse-possession period, Minn.Stat. § 541.02 (2002), states:

Such limitations shall not be a bar to an action for the recovery of real estate assessed as tracts or parcels separate from other real estate, unless it appears that the party claiming title by adverse possession or the party's ancestor, predecessor, or grantor, or all of them together, shall have paid taxes on the real estate in question at least five consecu-

tive years of the time during which the party claims these lands to have been occupied adversely.

The provisions [above] *shall not apply to actions relating to the boundary line of lands,* which boundary lines are established by adverse possession, or to actions concerning lands included between the government or platted line and the line established by such adverse possession, or to lands not assessed for taxation.

Minn.Stat. § 541.02 (2002) (emphasis added).

The examiner found that because respondents' Torrens application asserted ownership over approximately 0.4 of an acre, or less than nine percent of the Ganje parcel, that this matter was a boundary dispute. Respondents' failure to pay real estate taxes on the irregularly shaped strip of land abutting the Schuler parcel, therefore, was not fatal to the perfection of their adverse-possession claim.

Appellants argue that although the disputed acreage was not a large percentage of the entire Ganje parcel, it is a valuable suburban tract of land and the dispute here is more than an argument over a boundary line. Appellants assert that the dictionary definition of "boundary" and "line" do not support respondents and that *Grubb v. State,* 433 N.W.2d 915, 918 (Minn. App.1988), *review denied* (Minn. Feb. 22, 1989), is applicable here. In *Grubb,* one landowner adversely possessed 13 acres of his neighbor's 16–acre parcel (approximately 80 percent). *Id.* at 919–21. This court held that such possession did not constitute a boundary-line dispute, and, because the adverse possessor did not pay the real-estate taxes assessed on the parcel for five consecutive years during his adverse occupancy, Minn.Stat. § 541.02

vested title in the record owner. *Id.* at 921.

Possession of 80 percent of another's land is obviously not a boundary-line dispute. Here, however, respondents possessed only *nine* percent of appellants' property. Although *Grubb* did not conclude that an adverse possessor must occupy nearly the entire disputed tract to trigger the tax-payment requirement of Minn. Stat. § 541.02, it likewise provided no insight as to what exactly constitutes a boundary-line dispute.

Here, the disputed property is a zig-zagged section of real estate running between the parties' lots. The small size and unique shape of the disputed property weighs in favor of respondents' argument that this real estate, abutting both parcels, resembles a boundary. There are additional indicia of a boundary-line dispute, including a fence line and a roadway. Further evidence that the parties considered this a boundary-line dispute is that respondents walked the area with the prior owners of the Ganje parcel, the Popes, in 1992, in an attempt to determine where the boundary line lay between the properties; in effect, those discussions were an attempt to determine where one property ended and another began. After failing to agree, respondents continued using the areas they already occupied.

Finally, the district court here found that *Wortman v. Siedow,* 173 Minn. 145, 216 N.W. 782 (1927), is similar to the present facts. In *Wortman,* defendant occupied the easterly 30 feet of plaintiff's property for more than 20 years when she plowed and cultivated to within a short distance of plaintiff's house. *Id.* at 146–48, 216 N.W. at 782–83. Because both parties had only paid the taxes assessed to their individual properties, plaintiff asserted that defendant was not eligible to claim the strip of property under the adverse-pos-

session statute. *Id.* at 146, 216 N.W. at 782. The district court concluded that defendant was not required to pay the taxes on the claimed property. *Id.* The supreme court agreed, holding that defendant fulfilled all the elements of adverse possession because her occupation of the land was clearly hostile to the claims of the true owner. *Id.* at 148, 216 N.W. at 783. Although the boundary-line exception was not thoroughly addressed, the supreme court held that under such circumstances, the finding of adverse possession of the strip of property up to plaintiff's house "cannot well be criticized" and thus exempted defendant from the tax requirement. *Id.*

Like *Wortman,* respondents here possessed a small portion of appellants' tract of property that ran between the two lots. Although it is impossible to determine the exact nature of a boundary-line dispute without a bright-line test, the record here supports the district court's conclusion that this is a boundary-line dispute.

## DECISION

Respondents established that they met all the requirements of adverse possession as to certain areas of the disputed property. Because we cannot say that the district court's findings of fact relating to the various disputed property areas were clearly erroneous, we affirm the award of part of the parcel to respondents. In so doing, we also affirm the district court's holding that respondents' adverse possession was a boundary-line dispute exempting them from the requirement of paying real-estate taxes on the occupied property to obtain title to it.

**Affirmed.**