*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1810**

Mark W. Besemann,
Appellant,

vs.

Roger T. Weber, et al.,
Respondents.

**Filed June 20, 2016
Affirmed
Connolly, Judge**

Itasca County District Court
File No. 31-CV-13-2695

Jaclyn Corradi Simon, Sellman Borland & Simon, PLLC, Duluth, Minnesota (for appellant)

Brian C. Bengtson, Lano, O'Toole & Bengtson, Ltd., Grand Rapids, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

After a court trial in this boundary dispute, appellant challenges the district court's determination that he failed to meet his burden of proving (1) adverse possession,

(2) trespass or an appropriate measure of damages for trespass, and (3) prescriptive easement. We affirm.

## FACTS

Respondent Roger T. Weber is the owner of approximately 39 acres of real property in Itasca County, Minnesota (the 39-acre parcel). Appellant Mark W. Besemann acquired title to one acre of real property in Itasca County, Minnesota (the one-acre parcel). Appellant's property is adjacent to the 39-acre parcel owned by respondent.

Prior to 1953, W. Raymond Dodson (Dodson) and Mary Dodson (collectively, the Dodsons) owned both of the above-described properties in one 40-acre parcel. On July 23, 1953, the Dodsons carved out the one-acre parcel and conveyed it to their daughter Colleen and her husband, Robert Weber (Robert), respondent's parents, as a wedding present. On March 18, 1968, Robert and Colleen divorced and, as part of a written agreement, the one-acre parcel was transferred to Robert by way of conduit deeds.

On November 3, 1976, Robert gave respondent a one-half interest in the one-acre parcel. In 1996, at his father's request, respondent re-conveyed his one-half interest in the one-acre parcel back to Robert so that Robert could convey the one-half interest to his daughter Ann, who is respondent's sister. In March of 2013, appellant notified Ann that he was interested in buying the one-acre parcel. On or about April 18, 2013, Ann sold the one-acre parcel to appellant "as is" for $15,000. A quitclaim deed dated April 12, 2013, was filed with the Itasca County recorder on April 22, 2013.

After conveying the one acre parcel in 1953, the Dodsons kept ownership of the remaining 39-acre parcel until June 7, 1978, when respondent, the Dodsons' grandson,

2

purchased it. The 39-acre parcel was subsequently transferred to Colleen on September 3, 1986. Respondent then reacquired the title back from his mother Colleen and other relatives who had an interest in the property on March 20, 1998 by a quitclaim deed.

The 1953 deed constituted a subdivision of the 40 acre parcel and no dimensions were formally surveyed. In the late 1950s, Robert, with the assistance and implicitly the permission of Dodson, moved a small house on the one-acre parcel to a position that was straddling the line between the one-acre parcel and the 39-acre parcel. After the house was moved it was converted to a garage. A lean-to was attached, and a detached shed was erected next to the lean-to by driving poles into the ground and nailing oriented strand board (OSB) to the poles. It is the land under and around these structures, on the 39-acre parcel that is now in dispute. Multiple witnesses testified that the garage, lean-to, and shed were eyesores that had no value and that their condition warranted that they be torn down for safety reasons. Robert mowed the grass on the disputed property and testimony at trial indicated that he maintained the disputed property as if it was his own. Robert also stored vehicles, a boat, and deer antlers in the garage.

Robert passed away on January 2, 2013, leaving the one-acre parcel to his daughter, Ann. A family feud arose following Robert's death due, in part, to hurt feelings regarding the funeral, to which Ann and her sister Amy, were not able to attend. In preparation for the sale of the one-acre parcel, then owned solely by Ann, a survey was done revealing that the garage, shed, and lean-to were on the boundary line between Ann's one-acre parcel and respondent's 39-acre parcel. Ann, who resides out of state, contacted her brother Frank to show the one-acre parcel to appellant in March 2013 because she could not show the parcel

3

herself. On a visit to the one-acre parcel, Frank and appellant observed a house and several outbuildings, including a three-stall garage, to which a single-stall lean-to was attached, as well as a separate shed located south of the garage. The three-stall garage and lean-to were locked when appellant visited, but he looked inside the garage-door windows and observed an older vehicle, deer antlers, and miscellaneous items including tools stored within the garage. But the district court found that both appellant and Frank credibly testified that, during the March 2013 property visit, Frank explicitly told appellant that the boundary line between the one-acre parcel Ann was selling and the 39-acre parcel respondent owned went through the middle of the garage.

It is undisputed that, beginning on April 22, 2013 and after the sale to appellant, respondent used a chainsaw to remove the single-stall shed, a portion of the lean-to, and a portion of the three-stall garage that were located on the 39-acre parcel. Neither appellant nor any other witnesses saw respondent remove the buildings. Respondent claims that, based on a conversation with his sister Ann prior to their father's death, Ann wanted the garage and outbuildings removed from the property in preparation for the sale of the one-acre parcel. The district court explicitly found that "[respondent's] testimony regarding his mindset when he destroyed and removed the shed, lean-to[,] and a portion of the three stall garage [was] neither credible nor accepted."

Appellant objected to removal of the buildings. Despite several conversations, the parties were unable to resolve their dispute, and appellant commenced this action against respondent on December 26, 2013. Appellant alleged that he, through his predecessor in interest, had seized possession of the land under the garage by adverse possession or,

4

alternatively, by a prescriptive easement. According to appellant, respondent committed trespass and damaged appellant's property by entering onto appellant's property to remove portions of the garage, shed, and lean-to. The district court ruled that appellant "failed to prove by clear and convincing evidence that [appellant's] predecessors in title adversely possessed the disputed property to the west of the [o]ne [a]cre [p]arcel, encompassing the garage, lean-to, and shed . . . for more than 15 years" because, "[a]lthough [appellant] arguably proved by clear and convincing evidence that [Robert's] possession of the disputed property was actual, open, continuous, and exclusive, [appellant] wholly failed to prove that such possession was hostile." The district court also concluded that, even if appellant were able to demonstrate trespass, he "failed to prove an appropriate measure of damages for such intrusion."

## DECISION

Appellant argues that, because testimony at trial clearly shows that no interested party was aware that a boundary-line issue existed until after the statutory 15-year time period passed and because Robert, appellant's predecessor in interest, used the property as if it were his own, appellant satisfied all the elements of adverse possession. Whether the elements of adverse possession have been established is a question of fact. *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003). We uphold a district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. "In applying this rule, we view the record in the light most favorable to the judgment of the district court." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). A finding of fact is clearly erroneous only "if the reviewing court is left with the definite and firm conviction that a mistake has been

5

made." *Id.* (quotation omitted). "But whether the findings of fact support a district court's conclusions of law and judgment is a question of law, which we review de novo." *Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App. 2002). The party seeking to establish adverse possession must show by clear-and-convincing evidence "that the property has been used in an actual, open, continuous, exclusive, and hostile manner for 15 years." *Rogers*, 603 N.W.2d at 657; Minn. Stat. § 541.02 (2014). "Failure to establish any one of the five essential[] [elements] is fatal to the validity of the claim." *Johnson v. Raddohl*, 226 Minn. 343, 345, 32 N.W.2d 860, 861 (1948). "The possession of successive occupants, if there is privity between them, may be tacked to make adverse possession for the requisite period." *Ebenhoh*, 642 N.W.2d at 109 (citations omitted) (quoting *Fredericksen v. Henke*, 167 Minn. 356, 360, 209 N.W. 257, 259 (1926)).

The district court concluded that, "although [appellant] arguably proved by clear and convincing evidence that [Robert's] possession of the disputed property was actual, open, continuous, and exclusive, [appellant] wholly failed to prove that such possession was hostile." We agree. The term hostility does not imply any type of personal animosity or physical overt acts against the record owner." *Ganje*, 659 N.W.2d at 268 (quotation omitted). "Instead, hostility contemplates the disseizor entering and taking possession of the land as if it were the disseizor's and owning it with the intention of excluding all others." *Id.* "Hostility is flexibly determined by examining the character of the possession and the acts of ownership of the occupant." *Id.* (quotation omitted). The claimant has the burden of proof, but if actual, open, continuous, and exclusive use is proven, then hostility of the use is presumed and the record owner of the estate has the burden of rebutting the

6

presumption by evidence that the use was permissive. *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn. 2000). However, the general rule of presumed hostility is modified in cases in which family members own both the dominant and servient estates because the nature of close familial relationships is such that mere actual, open, exclusive, and continuous possession is not enough to give notice to a family member that a use is hostile. *Id.* at 396-97. In these situations, the presence of the close familial relationship gives rise to "the inference, if not the presumption" that the use is permissive. *Id.* at 397. Additionally, when such original use is permissive, "it would be presumed to continue as permissive, rather than hostile, until the contrary was affirmatively shown." *Wojahn v. Johnson*, 297 N.W.2d 298, 306 (Minn. 1980).

Here, the district court determined that a close familial relationship existed and applied an inference, if not a presumption, of permissive use. The initial placement of the garage was permissive. The garage was moved to the current location using logs and tractors, and Dodson drove one of the tractors. The fact that Dodson helped to determine where the garage would be located on the property is the strongest possible evidence that Robert's use of the garage was permissive, despite its encroachment onto the 39-acre parcel.

Appellant argues that the inference afforded to family members with neighboring properties is inapplicable to this case because, during the time appellant alleges that the adverse possession occurred, Robert did not have a close family relationship with the neighboring property owners. We disagree. After the garage was placed straddling the property line between the one-acre parcel and the 39-acre parcel in the late 1950s, when

7

Robert owned the one-acre parcel, the 39-acre parcel was owned by his father-in-law and mother-in-law until 1986; by his son, respondent, for ten years until 1996; by his ex-wife for 12 years until 1998, and then again by his son, respondent, for the remainder of Robert's life. Further, respondent owned a one-half interest in the one-acre parcel from March 11, 1976, to sometime in 1996.[1] After that, Robert's daughter Ann owned a one-half interest in the one-acre parcel. We conclude that, during the time appellant seeks to establish adverse possession, there was a close familial relationship between a mother and her son and daughter and a close familial relationship between Robert and respondent. *See Beitz v. Buendiger*, 144 Minn. 52, 55, 174 N.W. 440, 441 (1919) (stating in dicta that the presumption of permissive possession is strongest as between parent and child, and "[adverse possession] cases arising between parent and child are in a class by themselves.")

Appellant relies on *Ebenhoh*, in which this court determined that the claim of possession against the record owners was hostile, rather than permissive, even though the claimants and the owners were part of a close family that regularly socialized together. 642 N.W.2d at 111-12. *Ebenhoh* established that a transfer of property to a close family member of an adjoining property owner does not render permissive that adjoining property owner's otherwise hostile use of the property. *Id.* at 112. However, *Ebenhoh* is easily distinguished in that the hostility commenced when an unrelated party owned the parcel in dispute. *Id.* Because, in this case, there was a close familial relationship between at least

---

[1] It is worth noting that the adverse possession period must begin after 1996. Otherwise, respondent would have taken part in adverse possession against himself.

one owner of the one-acre parcel and the owner of the 39-acre parcel at all times, an inference, if not a presumption, of permissive use applies.

Appellant has failed to affirmatively show, by clear-and-convincing evidence, that Robert's use of the land was hostile. The district court determined that Robert had a cooperative, noncontentious relationship with the owners of the 39-acre parcel. No witness testified to being aware of any boundary-line disputes regarding the garage, lean-to, or shed.

Appellant also argues that he successfully rebutted the presumption that the use of the property was permissive because neither Robert nor respondent was aware of the existence of the boundary lines until the statutory time period had passed. Appellant argues that, where a record owner is unaware that a claimant is adversely using his property, there can by definition be no permissive use of the property. But the case relied upon by appellant states that "'[p]ermission' denotes the owner's grant of permission in fact, rather than mere acquiescence or failure to assert paramount rights." *See Lechner v. Adelman*, 369 N.W.2d 331, 334 (Minn. App. 1985), *review denied* (Minn. App. Aug. 29, 1985). Dodson did more than acquiesce; he physically helped Robert move the garage onto the property line. This is not a case where a neighbor sat and watched someone relocate a structure onto the property line; this is a case where the owner of the servient property used his own tractor to move the garage onto the property line. Dodson's actions were significantly more than "passive conduct on the part of the owner of the servient estate." *Ehle v. Prosser*, 293 Minn. 183, 191, 197 N.W.2d 458, 463 (1972) (distinguishing

9

"acquiescence" from "permission" in the context of establishing an adverse user of property).

We conclude that appellant has failed to show by clear-and-convincing evidence that the district court erred in concluding that appellant did not satisfy the hostility requirement of adverse possession.[2]  As a result, appellant has failed to show that he had a right of possession to the property at issue or that respondent entered onto appellant's property as required in an action for trespass.  *See Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 701 (Minn. 2012) ("[A] trespass is committed where a plaintiff has the right of possession to the land at issue and there is a wrongful and unlawful entry upon such possession by defendant." (quotations omitted)).  We conclude that appellant has not shown by clear-and-convincing evidence that the district court erred in determining that appellant failed to satisfy the elements of his trespass claim.  Because of this conclusion, we do not reach the issue of whether the district court erred in concluding that appellant failed to prove an appropriate measure of damages for trespass.

While we do not condone the manner in which respondent removed the portion of the garage, shed, and lean-to located on his side of the property line, we conclude that in this case, respondent's actions do not constitute trespass under Minnesota law.

**Affirmed.**

---

[2] "A prescriptive easement requires the same elements [as adverse possession], but a difference exists between *possessing* the land for adverse possession and *using* the land for a prescriptive easement."  *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 230 n.3 (Minn. 2008) (quotation omitted). For the same reasons discussed above regarding hostility in adverse possession, we conclude that appellant fails to satisfy the hostility requirement for a prescriptive easement.