*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0438

Mary Ann Karnowski,
Respondent,

vs.

Thomas George Wimmer, et al.,
Appellants.

**Filed November 20, 2023**
**Affirmed**
**Kirk, Judge***

Morrison County District Court
File No. 49-CV-21-1505

Virginia J. Knudson, Borden, Steinbauer, Krueger & Knudson, P.A., Brainerd, Minnesota (for respondent)

Jonathan D. Wolf, Rinke Noonan, Ltd., St. Cloud, Minnesota (for appellants)

Considered and decided by Larkin, Presiding Judge; Wheelock, Judge; and Kirk, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

Following a court trial in this adverse-possession dispute, appellants Thomas George Wimmer and Brenda Lee Wimmer contest the district court's order granting respondent Mary Ann Karnowski title to property she describes as tract A. The Wimmers argue that the district court erred in determining that Karnowski adversely possessed tract A without evidence that she paid taxes on the property and that it erred in determining Karnowski met the elements for adverse possession. We affirm.

**FACTS**

In 1982, Karnowski and her late husband purchased lot 45 of Pan's Shore Lots on Fish Trap Lake in Morrison County. The Wimmers purchased lots 43 and 44 in 2013. Karnowski initiated an action against the Wimmers in 2021, claiming title through adverse possession to property she designated as tract A.

A map from the record shows the following: Karnowski's lot 45, and the Wimmers' two lots, 43 and 44, border each other moving numerically from east to west. Tract A occupies a substantial, triangular-shaped portion of the Wimmer's property and straddles the entire border between the Wimmers' property and Karnowski's lot 45. Tract A includes multiple structures, including a propane tank, two sheds, two wood platforms, and a removable fish house. The driveway to Karnowski's cabin also swings through the southern portion of tract A. The effect of Karnowski's possession of tract A is to essentially push her eastern property line farther east, and into property the Wimmers own.

2



At trial, multiple witnesses testified about various activities Karnowski and her family conducted on tract A throughout their ownership of lot 45. Karnwoski's son testified that shortly after his family moved out to the cabin his father and the sons of the Wimmers' predecessors in interest located a pin near the road to the south of tract A. At the time, they believed the pin marked the southeast corner of the Karnowskis' property, but it actually marked the southeast corner of lot 44. Karnowski's son also stated that his father and their

3

neighbors installed fence posts on their respective sides of the pin to service a gate that prohibited trespassers from entering their properties. According to additional testimony from Karnowski and her son, in 1988, the family removed an outhouse on tract A and replaced it with a 1,500-gallon holding tank and a shed to cover the tank.

Multiple witnesses also testified about a fence that ran along what the Karnowskis believed was their eastern property line and which Karnowski now designates as the eastern boundary of tract A. A cousin of Karnowski's late husband said that he helped put up the fence around 1995. Karnowski confirmed during her testimony that the fence remained standing as recently as 2004. Karnowski and her son both testified that the purpose of the fence was to protect their property from a neighbor's disruptive behavior.

In addition, the district court heard testimony about the Karnowskis keeping fish houses in the southern portion of tract A for long periods of time during their ownership. In 2004, the Karnowskis also set up a propane tank in the northern portion of tract A after they expanded their cabin. Karnowski testified that the location of her driveway, which also sits partially on tract A, had not changed throughout her ownership of lot 45, and that she paved the driveway around 2018. A niece of Karnowski who had visited Fish Trap Lake since the 1980s testified that Karnwoski and her late husband maintained the structures within tract A and cleaned, mowed, and raked the leaves. Karnowski's son testified that his parents, since 1982, had "used and maintained" tract A "without a doubt."

By contrast, Thomas Wimmer, who spent much of his childhood on Fish Trap Lake, testified that he remembered the Karnowskis' driveway being straighter and not being as far to the east as it is now. Nevertheless, he conceded that he was not around the property

4

for long periods of time during college and his teaching career. The district court characterized the Wimmers' knowledge of the Karnowskis' use of tract A before 2013 as "vague." The Wimmers also testified that they conducted periodic cleanup and other activities on tract A beginning in 2019, like placing a grill and clothesline on the property, raking, and resecuring a tarp over a wood platform.

The district court issued an order that Karnowski owned tract A through adverse possession. The Wimmers appealed.

## DECISION

The Wimmers argue that the district court erred by concluding that Karnowski established the elements for adverse possession.[1] They contend that, under a clear and convincing burden of proof, it is far from clear that Karnowski adversely possessed tract A outside the immediate vicinity of the permanent structures her family placed on the property. Karnowski argues that the full scope of her family's conduct on tract A demonstrates adverse possession over the entire tract. She emphasizes that her family

---

[1] The Wimmers also argue that Minnesota law required Karnowski to pay taxes on tract A because she claimed adverse possession over a separately assessed parcel and because her claim did not relate to a boundary line dispute. *See* Minn. Stat. § 541.02 (2022). Karnowski argues that the Wimmers forfeited the property tax issue on appeal because they never raised it in district court. We agree. Generally, appellate courts only consider "issues that the record shows were presented and considered by the trial court." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). The sole material in the record that the Wimmers point to for preservation of the property tax issue is testimony Thomas Wimmer provided in reference to a warranty deed. But the purpose of that questioning was to confirm that the Wimmers purchased their property for consideration, not that particular people paid taxes on the property. Also, the Wimmers never argued that the testimony about the tax payment implicated section 541.02 and that the statute required Karnowksi to pay taxes on tract A. Because the Wimmers did not develop the record or present a legal theory to the district court on the property tax issue, we decline to consider it on appeal.

engaged in many activities on the tract beyond placement of permanent structures, such as maintaining the lawn and driveway, and putting up a fence along the eastern boundary of tract A.

Title by adverse possession requires "clear and convincing evidence, [of] actual, open, hostile, continuous, and exclusive possession" of property for the requisite statutory period of 15 years. *Ehle v. Prosser*, 197 N.W.2d 458, 462 (Minn. 1972). Clear and convincing evidence requires "a strict construction of the evidence, without resort to any inference or presumption" that favors the adverse claimant, "but with the indulgence of every presumption against him." *Village of Newport v. Taylor*, 30 N.W.2d 588, 591 (Minn. 1948). The burden of proof for adverse possession is with the adverse claimant. *Hoverson v. Hoverson*, 12 N.W.2d 501, 504 (Minn. 1943).

Whether a party meets the elements for adverse possession is a question of fact. *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003). A district court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. Findings of fact are clearly erroneous when they are "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn. 1985) (citing *N.S.P. v. Lyon Food Products, Inc.*, 229 N.W.2d 521, 524 (Minn. 1975)). We address each element in turn.

### *Actual and Open Possession*

The first elements for adverse possession are actual and open possession. Both require conduct that is sufficient to provide the rightful owner with "unequivocal notice" that another party seized their property. *Skala v. Lindbeck*, 214 N.W. 271, 272 (Minn. 1927). What constitutes actual and open possession varies with the nature of the property, but regardless, the adverse claimant must actually appropriate property for "permanent and exclusive dominion" and show visible intent to do the same. *Id.*; *In re Reg. in Title in St. Louis Cnty.*, 147 N.W. 655, 657 (Minn. 1914). Constructing a fence or a building is not essential to establish actual and open possession. *Young v. Grieb*, 104 N.W. 131, 131 (Minn. 1905). However, an activity like erecting a permanent structure can trigger actual and open possession when lawn work or other activity is sporadic. *Bazille v. Murray*, 41 N.W. 238, 239 (Minn. 1889); *see Stanard v. Urban*, 453 N.W.2d 733, 735-37 & n.1 (Minn. App. 1990), *rev. denied* (Minn. June 15, 1990). For instance, in *Stanard*, where the adverse claimants mowed grass up to their proposed boundary, stored a dock, and let children and grandchildren play on the property, the 15-year period for adverse possession did not begin to run until they constructed a shed. 453 N.W.2d at 735, 737.

Here, the record contains ample evidence to support a finding of actual and open possession of the entirety of tract A. The fence that Karnowski and her husband maintained along the eastern boundary of tract A would have bolstered their control over the property and visibly projected to others that it belonged to the family. The installation of fence posts and eventually a gate near the southeast corner of tract A also would have enhanced and projected possession over portions of the property as well.

Evidence from the record about the Karnowskis' placement of various physical structures across tract A, along with their maintenance and use of the property, also support actual and open possession. Among the structures they placed on the property were the propane tank, the fish houses, and the shed and holding tank, about which witnesses testified during trial. A relative of Karnowski testified the family performed yard maintenance between those structures. Meanwhile, the driveway to Karnowski's cabin ran across the southern portion of tract A throughout her ownership of lot 45, and she testified that she paved the driveway as recently as 2018. Because the record contains evidence that is highly probative of real and visible control over tract A, we conclude the district court was not clearly erroneous in finding that Karnowski actually and openly possessed the property.

### *Exclusivity*

The next element, exclusivity, requires the adverse claimant to possess property with intent to treat it as their own and to keep others out, notwithstanding intermittent entries from other parties. *See Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108-09 (Minn. App. 2002). In this case, testimony from Karnowski and her son that the family built a fence along the eastern boundary of tract A to keep a neighbor off their property demonstrates intent to keep others away. Likewise, Karnowski's son testified that years earlier they installed fence posts and a gate to exclude trespassers from tract A near the road. Furthermore, the Karnowskis' installation of the holding tank and shed, placement of the propane tank, storage of fish houses, and lawn maintenance also suggest the family treated

8

the property as their own. The district court's finding of exclusive possession was not clearly erroneous.

### Continuous Possession

For continuous possession, the adverse claimant must exercise ongoing dominion over the property for the statutory period of 15 years. *Romans v. Nadler*, 14 N.W.2d 482, 485 (Minn. 1944). Although what suffices as continuous possession depends on the specific purposes for which the property is fit, use and occupancy cannot become so sporadic that the adverse claimant resembles a trespasser more than a landowner. *Id.*; *see Fredricksen v. Henke*, 209 N.W. 257, 258 (Minn. 1926).

Here, as we stated previously, the record contains evidence that during their ownership of lot 45, the Karnowskis kept fish houses on the tract, maintained the lawn between the structures on the property, and used a driveway that ran through it. Again, during the early years of their ownership, the Karnowskis placed fence posts and a gate on tract A near the road, and in 1988, built a shed and holding tank. Testimony from the trial indicated that the Karnowskis maintained a fence on the eastern boundary of tract A from 1995 to at least 2004. Also in 2004, the Karnowskis installed a propane tank in the northern area of the tract. Given the four-decade duration of Karnowski's ownership of lot 45, and the breadth of her family's activity on tract A during that time, a finding of continuous possession for 15 years was not clearly erroneous.

### Hostility

Lastly, "hostility" requires adverse possessors to enter and possess property as if it were their own and with intent to exclude others. *Ganje*, 659 N.W.2d at 268. Hostility does

9

not require personal enmity towards the true owners. *Id.* Furthermore, good-faith seizure of property, such as over mistaken boundary lines, does not undermine the hostility element. *Mellenthin v. Brantman*, 1 N.W.2d 141, 143-44 (Minn. 1941). Here, as we indicated above, ample evidence from the record indicates that Karnowski and the family treated tract A as their own for many years and to the exclusion of others. Evidence that her family occupied tract A because of mistaken boundary lines, rather than intent to seize the property, does not negate Karnowski's claim. The district court's finding of hostile possession was not clearly erroneous.

The district court did not err in its finding of fact that Karnowski met the elements for adverse possession by clear and convincing evidence.

**Affirmed.**