**John WEIS, et al., Appellants,**

**v.**

**Harry A. KOZAK, Respondent.**

**No. C2–87–394.**

Court of Appeals of Minnesota.

Aug. 25, 1987.

William F. Kolbinger, Kolbinger Law Office, Mankato, for appellants.

Thomas W. Lies, Schroeder, Pennington & Lies, St. Cloud, for respondent.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

This is a boundary line dispute between adjoining property owners John Weis and Harry Kozak. A survey showed the property line does not coincide with the fence line, and each landowner claimed ownership of the resulting strip of land.[1] Kozak brought this quiet-title action and the trial court determined that he was the fee simple owner of the disputed strip. Weis appeals the judgment, claiming title through adverse possession or by practical location. We affirm.

## FACTS

Harry Kozak and John Weis own adjoining parcels of land in Sherburne county. Kozak's property is described as

---

1. This boundary dispute was the subject of an earlier suit and appeal in which the trial court directed a verdict against Kozak at the close of his case for failure to provide an independent survey of the property. *Kozak v. Weis,* 348 N.W.2d 798 (Minn.Ct.App.1984).

the west half of the northwest quarter of section twenty-nine (29) and the northeast quarter of section thirty (30) all in township thirty-five (35), range twenty-nine (29) containing 240 acres, more or less according to the government survey thereof, in Sherburne county, Minnesota.

Weis' property runs in an L-shape along the southern and western boundaries of Kozak's parcel. Kozak purchased his land in 1958, when John Weis' father, Joe Weis, owned the adjoining property. John Weis began renting the land from his father in 1964 and purchased it in 1973.

Between 1963 and 1967, Kozak, John Weis and Joe Weis agreed to build a fence between their properties to prevent mingling of cattle. Weis built the entire stretch of fence running east-west and approximately the south half of the fence running north-south. Kozak built the remaining section of the north-south fence. A line of trees extends along what was believed to be the north-south boundary line and they decided, for no apparent reason, to build the fence on the east side of the tree line. The fence was not intended to mark the exact boundary line because they did not know where it was. After the fence was built, Kozak told Weis that it "wasn't in the right place," but neither wanted to pay a surveyor to determine the exact boundary and they decided to leave the fence where it stood. Weis farmed up to the fence line and both owned cattle which grazed along the fence on either side.

In 1972 Kozak replaced the posts on the section of fence he built and installed a pole barn on the northwest corner of his property, about four feet from the fence line. Weis allowed Kozak to install the posts from his side of the fence. The new fence moved the fence line gradually westward, from a few inches at the middle of the fence line to approximately two feet west at the wooded, northernmost end. Kozak claimed Weis knew the fence was moved, but Weis asserts he did not learn the fence had been moved until 1979. In either case, Weis did not protest.

In 1974 Sherburne County began a remonumentation project to determine boundaries and re-establish section corner posts placed by original government surveyors. The resulting survey, completed in 1981, showed that the actual boundary line lies somewhere to the south and west of the existing fence line, resulting in the narrow strip of disputed property which amounts to approximately two and one-half acres.

After obtaining an independent survey establishing his ownership of the disputed property, Kozak brought this action in 1985. Weis answered, claiming ownership through adverse possession and, in the alternative, that the fence built by both parties represented the boundary by practical location. The trial court, in detailed and clear findings, rejected Weis' claims because the evidence did not establish adverse possession or practical location of a boundary.

## ISSUES

1. Did appellant present sufficient evidence to acquire title to the disputed property through adverse possession?

2. Did appellant prove the fence line constitutes the boundary by practical location?

## ANALYSIS

### I

In boundary line cases, the trial court's findings will not be disturbed unless the evidence taken as a whole furnishes no substantial support or when the evidence is manifestly or palpably contrary to the findings. *Engquist v. Wirtjes*, 243 Minn. 502, 506, 68 N.W.2d 412, 416 (1955). The evidence must be construed "without resort to any inference of presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Lechner v. Adelman*, 369 N.W.2d 331, 334 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Aug. 29, 1985) (quoting *Village of Newport v. Taylor*, 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948)).

The evidence showed Weis regularly farmed most of the property in dispute and

his cattle grazed over the entire property, including the wooded areas. Although cultivation is a sufficient use to satisfy the requirement for adverse possession, *see Butler v. Drake,* 62 Minn. 229, 230–31, 64 N.W. 559, 560 (1895), Minnesota courts have not yet determined whether pasturing cattle constitutes sufficient possession to sustain a claim of adverse possession.

A number of jurisdictions have held that pasturing livestock is sufficient possession to meet the requirements of adverse possession, *Faulks v. Schrider,* 114 F.2d 587 (D.C.Cir.1940); *McRae v. Ketchum et al.,* 138 Fla. 610, 189 So. 853 (1939); *Berry v. Cohn et al.,* 47 Cal.App. 19, 189 P. 1044 (1920); *Young v. Newbro,* 32 Wash.2d 141, 200 P.2d 975 (1948). At least one case, *Richey v. Miller,* 142 Tex. 274, 177 S.W.2d 255 (1944), *aff'g* 173 S.W.2d 490 (Tex.Civ. App.1943), holds cattle use is not sufficient to constitute adverse possession.

In the other states that have considered the question, the result depends upon the surrounding circumstances. *See State National Bank & Trust Co. v. Jacobsen,* 218 Neb. 682, 358 N.W.2d 743 (1984) (pasturing cattle continuously for nearly 30 years constituted sufficient possession); *Northwoods Development Corp. v. Klement,* 24 Wis.2d 387, 129 N.W.2d 121 (1964) (pasturing cattle regularly in an enclosed dairy pasture is sufficient open and notorious use for adverse possession); *Martin v. Rippel,* 152 N.W.2d 332 (N.D.1967) (evidence of pasture use insufficient when fence was destroyed and had not been rebuilt for several years and no cattle were on land for same period); *Barley v. Fisher,* 267 Mich. 450, 255 N.W. 223 (1934) (pasturing cattle on disputed land insufficient use for adverse possession when many others also used the land for that purpose).

Assuming Weis satisfied the requirement of actual possession through cultivation and cattle use, he still had to prove, by clear and convincing evidence, an actual, open, hostile, continuous and exclusive possession for the 15–year statutory period. *Ehle v. Prosser,* 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972); Minn.Stat. § 541.02 (1982).

■ Aside from the location of the fence built by both parties, there is no evidence Weis claimed ownership of the property. He made no effort to exclude Kozak when the fence was moved in 1972. The evidence on the whole suggests permissive, rather than hostile, possession. The parties jointly agreed to build the fence because of the cattle, but did not use it to designate a boundary line. When Kozak told Weis the fence "wasn't in the right place," they agreed to leave the fence as it stood because it would be too expensive to move, an apparent mutual grant of permission for each party to use the available land.

■ When use of property begins as permissive, the continued use is also deemed permissive until the contrary is affirmatively shown. *Lechner,* 369 N.W.2d at 334. There is no evidence Weis communicated an adverse intent to Kozak or occupied the property in an attempt to claim it as his own. We agree with the trial court that Weis did not prove the elements necessary to establish adverse possession.

## II

Weis also contends the fence line constituted a practical boundary under Minnesota law.

The practical location of a boundary line can be established in one of three ways:

(1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.

(2) Agreement: The line must have been expressly agreed on and afterwards acquiesced in by the interested parties.

(3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached on the property or subjected himself to expense which he would not have incurred had the line been in dispute.

*E.g., Theros v. Phillips,* 256 N.W.2d 852, 858 (Minn.1977); *Phillips v. Blowers,* 281

Minn. 267, 269, 161 N.W.2d 524, 526 (1968).

*Wojahn v. Johnson,* 297 N.W.2d 298, 304 (Minn.1980).

The evidence of acquiescence must be clear, positive and unequivocal. *Engquist,* 243 Minn. at 507, 68 N.W.2d at 417. "[T]he acquiescence required is not merely passive consent to the existence of a fence * * * but rather is conduct or lack thereof from which assent to the fence * * as a boundary line may be reasonably inferred." *Wojahn v. Johnson,* 297 N.W.2d 298, 305 (Minn.1980) (citing *Engquist,* 243 Minn. at 507–08, 68 N.W.2d at 417). In determining acquiescence, it is significant whether the parties attempted and intended to place the fence as near the dividing line as possible. *Id.* The evidence shows that neither party attempted nor intended to build the fence on the boundary line. The purpose of the fence was to separate their cattle. The conduct of Kozak in moving the fence in 1972 and the intended use of the fence militate against acquiescence.

The evidence does not show an express agreement between the parties on the location of a boundary line or reliance on the fence line as the true boundary. Although the true boundary line was not known until it was surveyed in early 1984, it was acknowledged that the fence did not lie on the boundary line. We agree with the trial court that Weis was unable to offer sufficient evidence to have the legally established boundary line judicially altered.

## DECISION

Affirmed.