*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0523**

Matthew Lalone, et al.,
Respondents,

vs.

Daniel Joseph Duerst,
Appellant.

**Filed February 26, 2024
Affirmed
Gaïtas, Judge**

Beltrami County District Court
File No. 04-CV-22-1570

Erik F. Hansen, Elizabeth M. Cadem, Burns & Hansen, P.A., Minneapolis, Minnesota (for respondents)

Daniel Joseph Duerst, Bemidji, Minnesota (self-represented appellant)

Considered and decided by Wheelock, Presiding Judge; Smith, Tracy M., Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Daniel Joseph Duerst challenges the district court's decision rejecting his claims of adverse possession and boundary by practical location following a court trial. He argues that the district court erred in determining that he has no claim to land owned by

respondents Matthew Lalone and Calyn Lalone, made clearly erroneous factual findings, and improperly denied his motions for reconsideration and for a new trial. We affirm.

**FACTS**

This case involves a 1,500-square-foot strip of land. A survey shows that the land is part of a lot that respondents purchased in 2020. But appellant, who owns an adjacent lot, also claims a right to the land. Over 20 years ago, and with the permission of the previous owners of respondents' lot, appellant built a fence that effectively incorporated the disputed strip of land into appellant's yard. After purchasing their lot, respondents sued appellant, seeking a judgment defining the boundary between the parties' properties. Appellant claimed in the lawsuit that he had adversely possessed the disputed land, or alternatively, that the fence marked a new boundary for the two lots. The case went to trial before the district court, and the district court ordered judgment in favor of respondents and against appellant.

The trial evidence, viewed in the light most favorable to the judgment, is summarized as follows. Appellant has owned and resided at the property described as "Lots (11) and (12), Block 11, Carson's Addition to Bemidji" for over 40 years. The adjacent property, "Lots 7, 8, 9, and l0, Block 11, Plat of Carson's Addition to Bemidji," is currently owned by respondents. Respondents purchased the property in December 2020 from the estate of William Rice. Rice purchased the property from Mark Haluptzok in July 2020. Haluptzok and his former business partner Mike Bakke each purchased a one-half interest in the property in 1982. But Bakke discontinued his involvement with the property in 1998 and signed his interest in the property over to Haluptzok in 2001.

2

Under the ownership of Haluptzok and Bakke, what is now respondents' property contained a restaurant named T Juan's. T Juan's parking lot abutted appellant's yard, and cars would frequently drive through the corner of appellant's property. Appellant, Haluptzok, and Bakke decided to construct a "good neighbor fence" to protect appellant's property from noise and traffic. Discussions about the fence occurred for several years before construction began. Eventually, it was decided that Haluptzok and Bakke would provide the materials and some of the tools, but appellant would build the fence.

No survey was done before constructing the fence, but everyone involved knew that the fence was located on Haluptzok and Bakke's side of the property line. The fence was intentionally built along the edge of T Juan's parking lot to protect appellant's property from restaurant traffic. Additionally, there was an agreement that the fence would "jog" around a tree located on Haluptzok and Bakke's property. This was done, according to Haluptzok's trial testimony, because the tree "had . . . a zip line [attached to it that was] for [appellant's] kids." Based on the undisputed trial testimony, appellant, Haluptzok, and Bakke never agreed that the fence would create a new property line.

With the help of his family and friends, appellant started construction on the fence in 1999 and finished it in 2000. Once construction started, appellant communicated about the project only with the managers of T Juan's, and not with Haluptzok or Bakke. Below is an image of the completed fence showing the "jog" around the tree.

3



For the next 22 years, appellant maintained the fence and the surrounding trees because he felt it was his duty "to be a good neighbor" and make the neighborhood look better, and he knew "nobody else was going to do it." Appellant never paid any taxes on the disputed portion of the property.

When respondents bought the property, they contacted appellant regarding the disputed area. Appellant asked to continue using the disputed area, but respondents informed him that he would have to purchase it. Appellant rejected this proposal. Respondents then requested a survey of the property. The survey showed that the fence was constructed entirely on respondents' property and that 1,500 square feet of respondents' property had been incorporated into appellant's yard. Neither party disputes the accuracy of the survey, which is shown below.[1]

---

[1] The image of the survey was introduced at trial and therefore is part of the record on appeal. However, the image included here is not the image that was formally offered as a trial exhibit. The image here is a higher-resolution version of the trial exhibit, which was included in appellant's brief. The phrase "CLIP FROM EXHIBIT 5" does not appear in the trial exhibit.



Following the trial, the district court determined that:

1. There was no acquiescence to establish a boundary by practical location with the fence that was built along the edge of the parking lot.

2. The evidence does not clearly and unequivocally show that Mr. Haluptzok and Mr. Bakke recognized the fence as the dividing line between their property and [appellant's] property.

3. There was no agreement that the fence would be the boundary line between [respondents'] property and [appellant's] property.

4. [Appellant] did not have hostile and exclusive possession of the land on the other side of the fence for the requisite period of time.

5. The survey completed by [the surveyor] on June 4, 2021 establishes the boundary line between [respondents'] property and [appellant's] property.

The district court concluded that appellant had no legal right to the disputed area. Appellant filed a motion for a new trial and a motion for reconsideration, both of which the district court denied, and he now appeals.

**DECISION**

**I.    The district court did not err in rejecting appellant's claims to the disputed land.**

At trial, appellant asserted two legal theories to support his claim to the disputed land—adverse possession and boundary by practical location. The district court rejected both theories. Appellant now contends this was error because the trial evidence clearly and convincingly established that he adversely possessed the disputed land, or alternatively, that the fence created a boundary by practical location.

**A.    The district court did not err in rejecting appellant's adverse-possession claim because the trial evidence did not prove the elements of that claim.**

"To succeed on a claim of adverse possession, an adverse claimant must show that [their] possession was actual, open, continuous, hostile, and exclusive for 15 years." *St. Paul Park Ref. Co. LLC v. Domeier*, 950 N.W.2d 547, 550 (Minn. 2020) (quotation omitted); *see also* Minn. Stat. § 541.02 (2022) (providing that an adverse claimant must have possession for at least 15 years to maintain a claim). The adverse claimant has the burden of proving each of these elements by clear and convincing evidence. *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003). "Evidence tending to establish adverse possession must be strictly construed, 'without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him.'"

6

*Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App. 2002) (quoting *Village of Newport v. Taylor*, 30 N.W.2d 588, 591 (Minn. 1948)).

Minnesota Statutes section 541.02 imposes an additional requirement on those attempting to establish legal title to property using adverse possession. Except in cases involving a boundary dispute, an adverse-possession claim will fail "if taxes have not been paid by the adverse claimant for 5 consecutive years." *Domeier*, 950 N.W.2d at 550 (citing Minn. Stat. § 541.02).

The district court determined that appellant failed to prove the elements of adverse possession, finding that the trial evidence did not establish that appellant had "hostile and exclusive possession of the land on the other side of the fence for the requisite period of time." Additionally, the district court rejected appellant's adverse-possession claim because appellant did not pay property taxes on the disputed land as required by section 541.02. On appeal, appellant challenges both determinations.

"Whether the adverse possession elements have been established is a question of fact." *Ganje*, 659 N.W.2d at 266; *see also Denman v. Gans*, 607 N.W.2d 788, 793 (Minn. App. 2000) ("[T]he question of adverse possession is for the fact finder, whether it be the jury or the court."), *rev. denied* (Minn. June 27, 2000). We will not set aside a district court's findings of fact unless they are "clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. But "whether the findings of fact support a district court's conclusions of law and judgment is a question of law, which [appellate courts] review de novo." *Ebenhoh*, 642 N.W.2d at 108.

We first address the district court's determination that appellant's possession of the disputed area was not hostile. The district court determined that appellant's possession was not hostile because appellant had "permission from Mr. Haluptzok and Mr. Bakke to use the property on the other side of the fence."

Hostile possession "does not imply any type of personal animosity or physical overt acts against the record owner. Instead, hostility contemplates the disseizor entering and taking possession of the land as if it were the disseizor's and owning it with the intention of excluding all others." *Ganje*, 659 N.W.2d at 268 (quotation omitted). It is a flexible concept, "determined by examining the character of the possession and the acts of ownership of the occupant." *Id.* (quoting *Ebenhoh*, 642 N.W.2d at 110-11). Possession must either be hostile from its inception or "its character must change into one of hostility." *Naporra v. Weckwerth*, 226 N.W. 569, 571 (Minn. 1929). And "when such original use was . . . permissive it would be presumed to continue as permissive, rather than hostile, until the contrary [is] affirmatively shown." *Wojahn v. Johnson*, 297 N.W.2d 298, 306 (Minn. 1980); *see also Junes v. Junes*, 196 N.W. 806, 807 (Minn. 1924) (providing that possession with the consent of the owner is not adverse and cannot ripen into a valid title merely by the passage of time); *Adams v. Johnson*, 136 N.W.2d 78, 81 (Minn. 1965) (stating that to turn permissive use into hostile use, the adverse claimant must make acts or declarations that clearly indicate their possession has become adverse).

Appellant contends that the record does not support the district court's finding that he had permission to use the disputed land. He argues that the record shows the opposite—

8

that he did not have permission. To support this argument, appellant points to the following testimony from Haluptzok:

> Q: Did you give [appellant] permission to use a portion of your property?
> A: No.
> Q: He did not have permission to use it?
> A: Not our property, no.

However, appellant fails to acknowledge that the record contains other evidence showing that his use *was* permissive at its inception. The trial evidence, including appellant's own testimony, established that the fence was built by agreement. According to the trial testimony, appellant and the other property owners knew that the fence was not on the property line, and they understood that the fence was not intended to create a new boundary. And Haluptzok testified that he also agreed the fence could "jog" around a tree located on Haluptzok and Bakke's property.

As an appellate court, we do not reweigh or reconcile conflicting evidence. *See In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021). Because the trial evidence supports the district court's finding that appellant had permission to use the disputed land, that finding is not clearly erroneous. *See Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). And to the extent that appellant argues that there is evidence that could have supported a different finding, those arguments are incompatible with our standard of appellate review.

Moreover, caselaw supports the district court's determination that appellant's possession of the disputed area was not hostile because he had permission to use the land. In *Weis v. Kozak*, which involved similar circumstances, we concluded that "an apparent

9

mutual grant of permission" defeated an adverse-possession claim. 410 N.W.2d 903, 906 (Minn. App. 1987). There, a fence was built by agreement of two property owners to separate their adjacent lots and "prevent [the] mingling of cattle." *Id.* at 905. The fence was never intended to mark the exact boundary line. *Id.* But after the fence had been standing for over 20 years, one lot owner claimed adverse possession of some of the other's property. *Id.* We affirmed the district court's determination that the elements of adverse possession were not met because "[t]he evidence on the whole suggest[ed] permissive, rather than hostile, possession." *Id.* at 906. Similarly, here, where the evidence showed that appellant's possession of the disputed land occurred with the permission of the original property owners—a permission that continued for many years—the district court did not err in determining that there was no hostile possession, defeating appellant's adverse-possession claim.

Appellant also challenges the district court's rejection of his adverse-possession claim based on his failure to pay property taxes for the disputed area. Although appellant does not dispute the district court's finding that he failed to pay property taxes, he argues that he was not required to pay property taxes under section 541.02 because his adverse-possession claim involves a boundary dispute. Appellant notes that section 541.02 contains an exception to the property tax requirement for boundary disputes.

Under section 541.02, on claims against "real estate assessed as tracts or parcels separate from other real estate," an adverse claimant must pay taxes on the disputed property for "at least five consecutive years of the time during which the party claims these lands to have been occupied adversely." Minn. Stat. § 541.02. But, as appellant observes,

10

there is an exception for boundary disputes. If an adverse claimant brings an action "relating to the boundary line of lands, [including] which boundary lines are established by adverse possession," the claimant is exempt from the statutory tax requirement. *Id.*

We disagree with appellant that the exception for boundary disputes applies to his adverse-possession claim. As we recently concluded in *Starbeck v. Gibson*, "[t]o qualify as a boundary-line dispute that is exempt from the tax-payment requirement, there must be genuine confusion over the true location of the boundary lines." ___ N.W.2d ___, ___, 2024 WL 73107, at *4 (Minn. App. Jan. 8, 2024).[2] In *Starbeck*, where the adverse claimant acknowledged that he was "fully aware of the actual boundary lines" in a dispute with a neighbor over land that the adverse claimant had been using for many years, we determined that absent confusion as to the true location of the boundary line, the adverse claimant could not rely on the boundary-line exception to section 541.02. *Id.* Likewise, here, where the record shows that Haluptzok, Bakke, and appellant knew that the fence was built on

---

[2] We noted in *Starbeck* that "there is not much caselaw addressing what constitutes a boundary-line dispute for purposes of the exemption in section 541.02, [but that] the caselaw that exists supports the conclusion that it requires genuine confusion between the parties concerning a property line." *Id.*; *see Ganje*, 659 N.W.2d at 270 (concluding the boundary-line exemption applied because the parties had "walked the [disputed] area . . . in an attempt to determine where the boundary line lay between the properties"); *Skala v. Lindbeck*, 214 N.W. 271, 272 (Minn. 1927) (reasoning that prior to a survey being conducted, "both parties believed [the fence] was located on the true boundary line between their respective holdings"); *Mellenthin v. Brantman*, 1 N.W.2d 141, 144 (Minn. 1941) (stating that the parties acted as if the fence was the boundary line because they believed that the adverse claimant's predecessor in interest had purchased the land all the way up to the fence); *Kelley v. Green*, 170 N.W. 922, 923-24 (Minn. 1919) (observing that a row of trees was treated as the boundary line for 26 years prior to discovering this may not actually be the boundary); *Fredericksen v. Henke*, 209 N.W. 257, 258-59 (Minn. 1926) (determining that a fence built by the previous owner was not the boundary line despite the parties mistakenly believing it was).

11

Haluptzok and Bakke's property, there was no "genuine confusion over the true location of the boundary line." Accordingly, the district court did not err in determining that appellant was required to pay taxes on the disputed area under section 541.02 to pursue an adverse-possession claim,[3] and that his failure to do so was fatal to the claim.[4]

**B. The district court did not err in rejecting appellant's claim that the fence established a boundary by practical location because the trial evidence does not support that claim.**

A boundary-by-practical-location claim is closely related to an adverse-possession claim—each is a "title-transferring event that relies in substantial part on the deed holder's conduct." *Gabler v. Fedoruk*, 756 N.W.2d 725, 728-29 (Minn. App. 2008). These actions are not, however, interchangeable as they require proof of different elements. *Denman*, 607 N.W.2d at 796. A boundary by practical location can be established in three ways:

> (1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.

---

[3] Although the district court found that appellant did not pay taxes on the disputed area, it did not explicitly consider or reject the argument that appellant now makes concerning the applicability of the exception for boundary disputes. We generally limit our review to issues that were presented to and considered by the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Because the record is unclear as to whether appellant argued to the district court that the exception applied, we have elected to consider the applicability of the exception.

[4] In the past, we considered the size of the disputed area relative to the entire property as one factor in determining if a case was a boundary-line dispute. *See State v. Grubb*, 433 N.W.2d 915, 920 (Minn. App. 1988), *rev. denied* (Minn. Feb. 22, 1989) (reasoning that the payment of taxes was only required in "actions where the disseizor claims all or substantially all of an assessed tract or parcel"). However, the supreme court in *Domeier* disagreed with our approach in *Grubb* and stated that "[a] claim to *any* portion of a separately assessed parcel requires tax payment if there is no boundary line dispute." 950 N.W.2d at 552. Therefore, we do not take the size of the disputed area into consideration.

(2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in.

(3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute.

*Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn. 1977) (quotation omitted); *see also Gabler*, 756 N.W.2d at 729. "Given the significance of the divestiture that follows a finding that a boundary has been established by practical location, the disseizor must establish the boundary by clear, positive, and unequivocal evidence." *Gabler*, 756 N.W.2d at 729 (quotation omitted).

The district court concluded that the trial evidence failed to establish that the construction of the fence created a boundary by practical location. It determined that "[t]here was no acquiescence to establish a boundary by practical location with the fence." And, because appellant "did not have any conversations or agreement with Mr. Haluptzok or Mr. Bakke that this fence would be the boundary line," the district court determined that a new property line was not created by agreement of the parties. Appellant challenges both of these determinations, and he contends that a new boundary was also established by the third method—estoppel.

Appellate courts review the district court's factual findings regarding whether a boundary by practical location was established for clear error and its legal conclusions de novo. *See Ruikkie v. Nall*, 798 N.W.2d 806, 814 (Minn. App. 2011).

13

We discern no error in the district court's rejection of appellant's boundary-by-practical-location claim. The district court found that Haluptzok, Bakke, and appellant understood the fence was not on the property line and never intended the fence to represent a new property line. Given this factual finding, which is supported by the record, appellant's boundary-by-location claim fails as a matter of law. Because no one was under the impression that the fence represented the property line, there was no acquiescence to a new boundary. *See Weis*, 410 N.W.2d at 907 (concluding a fence was not a boundary by acquiescence because "[t]he evidence show[ed] that neither party attempted nor intended to build the fence on the boundary line [and that] [t]he purpose of the fence was to separate their cattle"). There was no agreement to create a new boundary. *See Ruikkie*, 798 N.W.2d at 818 (stating that, to create a boundary by agreement, the parties must engage in some "specific discussion identifying the boundary line or a specific boundary-related action" (quotation omitted)). And, because there was a mutual understanding that the fence did not demarcate the property line, appellant did not establish a boundary by estoppel. *See Halverson v. Village of Deerwood*, 322 N.W.2d 761, 769 (Minn. 1982) (stating that boundary by estoppel "requires knowing silence on the part of the party to be charged and *unknowing* detriment to the other" (quotation omitted) (emphasis added)); *cf. Theros*, 256 N.W.2d at 859 (observing that the adverse claimants "willingly paid for improvements on what they knew was not their property because they knew their customers were parking [in the disputed parking lot]" and rejecting their boundary-by-estoppel argument).

14

In sum, the district court did not err in rejecting appellant's adverse-possession and boundary-by-location claims. Neither the facts nor the law supported appellant's claims to the disputed area.[5]

## II. The district court did not make clearly erroneous factual findings.

Appellant challenges two of the district court's factual findings as clearly erroneous. On appeal, the reviewing court will not set aside a district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Kenney*, 963 N.W.2d at 221; *see also Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn. 1985).

Appellant first contends that the district court clearly erred when it found "Mr. Haluptzok and Mr. Bakke decided to build [the] fence." According to appellant, "it would have been impossible for Mr. Bakke to have been there and involved in any construction or planning of the fence in 1999 or in 2000" because when construction started, Bakke was no longer involved with the property. However, the district court did not find that Bakke was involved in the *construction* of the fence; the factual finding is that Haluptzok and Bakke "decided to build [the] fence." Both appellant and Haluptzok

_____

[5] Appellant's brief asserts that, if his claim to the disputed area is valid, respondents' lawsuit was barred by the statute of limitations. *See* Minn. Stat. § 541.02 ("No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff . . . possessed . . . the premises in question within 15 years before the beginning of the action."). Because we conclude the district court did not err in rejecting appellant's claim to the disputed area, we do not address appellant's separately framed statute-of-limitations argument.

15

testified that they discussed building the fence for "several years" before starting construction. And the trial evidence showed that Bakke discontinued his involvement in the property in 1998.[6] Thus, the district court's factual finding is supported by the evidence and is not clearly erroneous.

Appellant's second challenge is to the district court's finding that appellant's family had a zip line attached to a tree on respondents' side of the property line when construction of the fence started. Again, the trial evidence supports the district court's finding. Haluptzok testified that he agreed to allow the fence to "jog" around the tree to allow appellant to continue to use the zip line. And there was no contrary evidence presented. We therefore conclude that the district court's factual finding as to the zip line was not clearly erroneous.

### III. The district court did not abuse its discretion in denying appellant's motion for reconsideration.

Appellant argues that the district court abused its discretion when it denied his posttrial motion for reconsideration. We review a district court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *See Goerke Fam. P'ship v. Lac qui Parle-Yellow Bank Watershed Dist.*, 857 N.W.2d 50, 52-53 (Minn. App. 2014). Under the Minnesota Rules of Civil Procedure, "[m]otions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling

---

[6] Appellant's brief also asserts that respondents' attorney committed misconduct during trial by not correcting the record when Haluptzok testified that Bakke was involved in the negotiations about where to build the fence. We reject appellant's claim because it is not supported by the record before us.

circumstances.  Requests to make such a motion . . . shall be made only by letter to the court of no more than two pages in length[.]"  Minn. R. Gen. Prac. 115.11.  Appellant's motion for reconsideration consisted of an 11-page letter filed without leave of the court. The district court denied the motion because appellant did not have permission to bring the motion and failed to show compelling circumstances.  Because the motion did not comply with the rules of general practice, and the district court denied the motion on that basis, the district court did not abuse its discretion.[7]

**Affirmed.**

---

[7] Appellant's brief raises two additional issues that we reject.

First, appellant argues that "the district court abuse[d] its discretion [by not allowing him] to have a new trial per the claims raised in his Motion for New Trial[.]"  An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection.  *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971); *see also State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (stating that appellate courts decline to reach issues that are inadequately briefed).  Because appellant does not provide any additional argument beyond this single statement, and because we have concluded that the district court did not err by finding that appellant failed to establish a right to the disputed property, we do not address this argument.

Second, appellant argues that the district court violated his right to due process by denying his pretrial request to use the Minnesota Digital Exhibit System (MNDES). Appellant does not cite legal authority that supports this argument, and we are not aware of any such authority.  Furthermore, appellant fails to explain how his lack of access to MNDES prejudiced him.  The record shows that appellant presented his trial exhibits in paper form.