**DAIN BOSWORTH INCORPORATED, Appellant,**

and

**Fred Friswold, et al., Defendants on Counterclaims, Appellants,**

**v.**

**Sandi GOETZE, individually and Sandi Goetze, as custodian for Jenny Raines Goetze, a minor, Defendant and Counterclaimant, Respondent.**

**No. C3–85–416.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

**468**

James B. Lynch, Dorsey & Whitney, Minneapolis, for Dain Bosworth Inc.

James B. Lynch, Dorsey & Whitney, Minneapolis, for Fred Friswold, et al.

Gregory T. Spalj, Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and LESLIE, JJ.

## OPINION

WOZNIAK, Judge.

Appellant, Dain Bosworth Incorporated, sued respondent, Sandi Goetze, for the conversion of 800 dividend shares of ADAC Labs stock. The trial court found that Goetze converted 350 of the shares and awarded Dain its actual damages for the conversion, plus prejudgment interest. The trial court held, however, that Dain was equitably estopped from recovering the remaining converted shares because Dain failed to advise Goetze before she converted the dividend shares that she was not entitled to them. We reverse.

## FACTS

Appellant Dain Bosworth Incorporated (Dain) is a broker-dealer of securities with its principal place of business in Minneapolis, Minnesota. Respondent Sandi Goetze had three accounts with Dain, one in her own name and one for each of her two children. These accounts were opened in 1978.

During the four years prior to the events giving rise to this lawsuit, Goetze traded stocks of various companies. She also experienced at least one stock split prior to the one involved in this case. In 1978, while Goetze was trading through Dain, stock that she owned in Schaak Electronics split three-for-one. Goetze admitted at trial that her broker explained to her at that time that she had not lost any money even though the price of the individual shares had dropped.

As of October 1982, Goetze owned 350 shares of ADAC Labs stock in her own account and 500 shares of ADAC Labs stock in the custodial account for her daughter. Goetze had purchased the shares in her own account at a price of $16⅛ per share and those in the custodial account at $16½ per share.

In October 1982, Goetze decided that she might want to sell the ADAC Labs stock. Because she had had a dispute with her prior broker, no one at Dain was assigned to her account. (The prior dispute is unrelated to this litigation.) Goetze contacted Brad Johnson of Dain's Burnsville office regarding the possibility of selling. Johnson declined to accept Goetze's account, but he did advise her that ADAC Labs stock was scheduled to split on October 29, 1982. Goetze then contacted John Peyton at Dain's Minneapolis office and asked him to handle her account, which he agreed to do. Goetze informed Peyton that ADAC Labs stock was due to split on October 29, 1982. Peyton confirmed this fact after checking his computer.

In October 1982, Goetze was unsure whether she ought to sell the 850 shares of ADAC Labs stock or whether she ought to maintain her holdings until after the split. Peyton advised her that, if she was concerned about selling or holding the stock, she should sell one of her blocks of stock and hold on to the other.

Goetze eventually decided to sell one of her blocks of stock prior to the split. On October 28, 1982, she sold the 350 shares that were in her personal account. Goetze had been told by Johnson that the stock was scheduled to split on October 29, and Peyton had confirmed this. The following day, October 29, Goetze called Peyton to

find out what had happened to the value of the stock after the split, and whether she should buy some back. Peyton told her that the stock had not split that day, but that since it was a Friday, Dain might not get the information on the split until Monday. On the following Monday, Goetze again called Peyton. It was at this time that Peyton first discovered that the ex-dividend date, the date of the actual split, was November 22.

At some time prior to November 10, 1982, after she had sold the first 350 shares, Goetze again contacted Peyton. Goetze was apparently considering selling the remaining 500 shares. Goetze testified at trial that it was her understanding that, if she sold these shares after the record date but before the ex-dividend date, she would be entitled to the dividend shares. She sold the remaining 500 shares on November 10, 1982. The trial court found that Goetze sold the 500 shares based on "investment advice from John Peyton that the ADAC Laboratories stock split was to be effective for holders of the stock on October 29, 1982," and that

> [a]t no time prior to Sandi Goetze's sale of any of the ADAC Laboratories stock, was she advised that by selling her shares ... prior to the 'ex-dividend' date, she would lose her right to retain the 'split shares' issued by ADAC Laboratories. However, Sandi Goetze had been advised that the stock split was to be effective for holders of stock on October 29, 1982.

In late November, Goetze received 800 dividend shares of stock from ADAC Labs. She immediately transferred them to her mother, for less than their market value, as part payment of an antecedent debt. Her mother sold the shares through a different broker in two blocks on November 29 and December 3, 1982. (Fifty shares did not make transfer, so Goetze received only 800 dividend shares. It is unclear why the transfer agent sent Goetze any dividend shares corresponding to the 350 shares she sold before the record date.)

Dain sent Goetze a letter dated December 1, 1982, demanding return of the 800 dividend shares. Goetze did not respond to this letter. Dain then contacted Goetze by phone several times to ask that she return the shares. She told them that she had already transferred them, but that she would try to get them back. Goetze testified at trial that, when she called her mother to try to get the shares back, she found out for the first time that her mother had sold them.

Because Goetze did not return the dividend shares to Dain, Dain was required by law to purchase 800 shares of ADAC Labs stock for Goetze's account in order to transfer the shares to the buyer. *See* General Rules and Regulations, Securities Exchange Act of 1934, 17 C.F.R. § 240.15c3–3(m) (1985). The purchase price for the 800 shares was $15,513. Dain sent Goetze a letter dated December 15, 1982 demanding that Goetze remit that amount. When Goetze did not do so, Dain brought this action for conversion of the 800 shares.

The trial court held that Goetze converted the 350 dividend shares of ADAC Labs stock which represented the 350 shares sold before the record date of October 29, 1982. The court held, however, that Goetze was not liable for the conversion of the remaining 500 dividend shares "because of the representations of John Peyton that the stock split was to be effective for holders of stock on October 29, 1982." (The trial court apparently miscalculated the total number of dividend shares received by Goetze; she received only 800, not 850.)

## ISSUES

1. Is appellant Dain Bosworth equitably estopped from recovering the remaining dividend shares on the grounds that they did not advise respondent that, if she sold her shares after the record date but before the dividend date, she would not be entitled to the dividend shares?

2. Did the trial court miscalculate appellant's damages?

## ANALYSIS

When a company implements a two-for-one stock split, as ADAC Labs did in 1982, the number of shares outstanding doubles and the value of each share is reduced by 50%. There are three important dates in a stock split. The first is the "record date," the date on which the transfer agent determines who the shareholders are. Generally, all shareholders of record as of the record date will be entitled to the dividend shares. The "ex-dividend date" is the date on which the stock actually splits. The "distribution date" is the date when the dividend shares are distributed. Here, the record date was October 29, 1982, the ex-dividend date was November 22, 1982, and the distribution date was November 29, 1982.

The crucial dates here are the record date and the ex-dividend date. If a shareholder sells after the record date, but before the ex-dividend date, the transfer agent will automatically send the dividend shares to that person because he or she was the shareholder on the record date. However, because the shares were sold before the ex-dividend date, the date the stock actually splits, the seller is not entitled to keep the dividend shares. The seller must return the dividend stock certificates to the broker so they can be forwarded to the buyer of the stock.

### I.

■ The parties do not dispute that Goetze's conduct constituted conversion, notwithstanding that she may have disposed of the dividend shares in good faith. Under Minnesota law, conversion is defined as an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property. *Larson v. Archer-Daniels-Midland Co., Inc.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948). The "[i]nnocent misapplication or deprivation of funds owned by others is in the law no less a conversion because such was done innocently or in ignorance." *Thorp Commercial Corp. v. Northgate Industries, Inc.*, 490 F.Supp. 197, 201 (D.Minn.1980) (quoting *Hauser v. Farwell, Ozmun, Kirk & Co.*, 299 F.Supp. 387, 395 (D.Minn.1969)). Good faith is not a defense to a claim of conversion. *Hoyt v. Duluth & Iron Range R. Co.*, 103 Minn. 396, 398, 115 N.W. 263, 264 (1908).

■ In this case, Goetze sold the 350 shares from her personal account prior to the record date. She sold the remaining 500 shares after the record date but before the ex-dividend date. She was therefore not entitled to any of the dividend shares, and her sale of the dividend shares to her mother constituted conversion, notwithstanding Goetze's possible good faith. The trial court held, however, that Dain Bosworth was equitably estopped from recovering the dividend shares which represented the 500 shares sold after the record date, but before the ex-dividend date.

■ The granting of equitable relief is within the sound discretion of the trial court. Only a clear abuse of that discretion will result in reversal. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979).

In *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn.1980), the Minnesota Supreme Court enumerated the elements of equitable estoppel:

1. There must be conduct—acts, language or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, *and at the time when it was acted upon by him.* 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted

upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as *to change his position for the worse;* in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Id.* (quoting 3 J. Pomeroy, A Treatise on Equity Jurisprudence § 805 (5th ed. 1941)) (emphasis added).

In this case, the record establishes that Peyton represented to Goetze that the stock split was to be effective for all holders of record on October 29, 1982. This representation was true. Goetze testified, however, that Peyton never advised her that by selling her stock after the record date but prior to the ex-dividend date, she would lose her right to the dividend shares. The trial court found that Goetze sold the second block of shares prior to the ex-dividend date "[b]ased upon the investment advice rendered by John Peyton."

■ Even when viewed in the light most favorable to the respondent, these facts are not sufficient to give rise to equitable estoppel. Even if we accept as true that Peyton was aware of Goetze's misunderstanding and yet made no attempt to disabuse her of it, the final element of equitable estoppel set forth in *Lunning,* detrimental reliance, has not been satisfied in this case. In order to invoke equitable estoppel, the party invoking the doctrine must have acted upon the misrepresentation or omission "in such a way as to change [her] position for the worse." *Lunning,* 303 N.W.2d at 457.

■ The mere fact that Goetze sold her stock before and not after the split does not give rise to detrimental reliance. This is because stock splits in and of themselves do not result in any change in value of an investor's holdings. When Goetze sold the 500 shares on November 10, before the November 22 ex-dividend date, she received the high pre-split price of $37 share. (She had purchased the stock at $16½ share.) Had she waited until after November 22 to sell, she would have had twice as many shares, but each share would have been worth half as much. Because a stock split is thus a "wash" transaction for the investor, Goetze cannot claim to have relied to her detriment solely by reason of selling before November 22.

In order to show detrimental reliance due to the timing of her sale of the stock, Goetze would have had to provide credible evidence as to when she would have sold the stock and the price at which she would have sold it had she been informed of the consequences of selling between the record date and the ex-dividend date. Goetze provided no such evidence. In the absence of such evidence, Goetze is not entitled to any setoff of her liability for the full value of the converted shares. *See Hornblower & Weeks-Hemphill Noyes v. Lazere,* 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974).

■ Respondent argues on appeal that she detrimentally relied by disposing of the dividend shares prior to being informed that she was not entitled to them. However, to the extent that she received value for the shares, she did not change her position for the worse. Goetze testified that she transferred the shares to her mother for less than full value. She does not, however, allege that she accepted less than full value for the shares in reliance on any representations by Dain. She could have sold the shares on the open market for their full value and therefore cannot claim to have changed her position for the worse by freely choosing to dispose of them at a discount.

■ The measure of damages for the conversion of stock is the highest market value that the stock reaches within a reasonable time after the owner has knowledge of the conversion. *Id.* at 473, 222 N.W.2d at 806. The purpose of the reasonable time period is to give the plaintiff an opportunity to decide whether and at what price he should buy replacement stock for

the converted stock. *Id.* In this case, however, Dain was required by law to purchase replacement stock for Goetze's account within ten business days in order to transfer the stock to the buyer. *See* 17 C.F.R. § 240.15c3–3(m). The appropriate measure of damages in this situation is the cost of "cover"; i.e., the cost to Dain of replacing the converted stock.

## II.

Goetze sold a total of 850 shares of ADAC Labs stock in the two transactions of October 28 and November 10, 1982. However, she received only 800 dividend shares, because 50 dividend shares went directly to the appellant. Respondent argues on appeal that, because the trial court held that Dain is equitably estopped from recovering the 500 dividend shares (representing the 500 shares sold on November 10) and because the extra 50 dividend shares went directly to Dain, Dain is only "short" 300 dividend shares as a result of the sale of 350 shares on October 28. Because we hold that Dain is entitled to recover the replacement cost of all of the dividend shares converted by Goetze, it is unnecessary to reach this argument.

## DECISION

The trial court's ruling that Dain Bosworth is estopped from recovering the replacement cost of all of the converted dividend shares is reversed.

Reversed.