*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0983**

Dale LeRoy Tiede, et al.,
Respondents,

vs.

County of Le Sueur, et al.,
Defendants,

Daniel J. Sullivan,
Appellant.

**Filed May 6, 2024
Affirmed
Cochran, Judge**

Le Sueur County District Court
File No. 40-CV-21-874

James P. Conway, Daniel J. Sagstetter, Jaspers, Moriarty & Wetherille, P.A., Shakopee,
Minnesota (for respondents)

Kimberly C. Woodgate, Anderson & Skubitz, PLLC, Le Sueur, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and
Cleary, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

NONPRECEDENTIAL OPINION

**COCHRAN**, Judge

Following a court trial in this dispute over title to real property, appellant challenges the district court's denial of appellant's claims of adverse possession, prescriptive easement, and conversion. Because appellant has not established that the district court erred when it concluded that he did not prove his claims involving the disputed property, we affirm.

## FACTS

This property dispute involves two adjacent parcels of agricultural land in Le Sueur County, Minnesota: Parcel A and Parcel B.[1] A brief overview of each parcel and the disputed property follows.

***Parcel A***

Parcel A is legally described as:

> The Southwest Quarter of the Southwest Quarter of Section 6, Township 111 North, Range 23 West, Le Sueur County, Minnesota, EXCEPTING THEREFROM THE FOLLOWING: The East 580.00 feet of the South 467.00 feet thereof.

This legal description has not changed since 1965.

---

[1] In its order following a court trial, the district court referred to the relevant properties as Parcel A and Parcel B. In his appellate brief, Sullivan refers to the relevant properties as the North Parcel (Parcel A) and the South Parcel (Parcel B). For consistency with the district court's order, this opinion refers to the relevant properties as Parcel A and Parcel B.

Fred and Eunice Washa owned Parcel A from 1965 to 2021, when Fred conveyed the property to the Fred L. Washa & Eunice B. Washa Living Trust (Washa Trust) following Eunice's death. That same year, the Washa Trust conveyed Parcel A to respondents Dale LeRoy Tiede and Patricia Ann Tiede. After taking ownership in 2021, the Tiedes paid taxes on the property.

Rodney and Marcella Marek rented Parcel A from the Washas from 1980 to 1993. The Tiedes rented Parcel A from the Washas from 1994 to 2021, prior to purchasing the property. The Tiedes' lease agreements for Parcel A noted that the property was located entirely within section 6.

Parcel A has been farmed continuously since 1965.

**Parcel B**

Parcel B is legally described as:

> The North [Half] of the Northwest [Quarter] of Section 7, Township 111 North, Range 23 West, Le Sueur County, Minnesota.

This legal description has not changed since 1968.

The Mareks owned Parcel B from 1968 to 2007, when Marcella died and Rodney conveyed the property to other family members, including their son, Fred Marek. The Marek family members conveyed Parcel B to Terrance Hanson in 2008, and Hanson conveyed the property to appellant Daniel J. Sullivan and his father in 2011. In 2018, Sullivan's father conveyed his interest in Parcel B to Sullivan, who currently owns the property.

The Tiedes rented Parcel B—first from the Mareks and then from Hanson—during the time period covering 1994 to 2010.  The Tiedes' lease agreements for Parcel B noted that the property was located entirely within section 7.

Parcel B has been farmed continuously since 1968.

### The Disputed Property a.k.a. the "Disputed Triangle"

As shown on the "site map" below, Parcel A is north of Parcel B.  Parcel A is part of section 6 and Parcel B is part of section 7.  County Road 26 (CR 26) originally separated section 6 from section 7, but, between 1978 and 1980, the county re-routed CR 26 by curving it north into section 6.  This created a triangle of land in the southwest corner of section 6, between Parcels A and B.  This "disputed triangle" is the subject of this litigation.

The disputed triangle is bounded on the west by County Road 136 (CR 136), on the northeast by CR 26, and on the south by the section line between Parcel A and Parcel B. The disputed triangle is also bounded on the west and south by a fence line that mirrors the boundaries of CR 26 before it was rerouted.



*The Mareks' Use of the Disputed Triangle*

The Mareks farmed the disputed triangle from 1980 to 1993 and reported the crops they harvested from the property on their Farm Service Agency (FSA) reports. During this time, the Mareks owned Parcel B and rented Parcel A from the Washas.

At trial, the district court heard testimony from Fred Marek. Marek testified that his father held out the disputed triangle as his own from 1980 to 1993, when he farmed the property, and that the Washas neither consented to nor objected to his farming practices. Marek further testified that his father did not add the disputed triangle onto his lease agreement with the Washas and did not pay the Washas for the crops he harvested from the property. But Marek admitted on cross-examination that he was not involved in the leasing process while his father was farming the disputed triangle and that he did not know whether Washa had given his father permission to farm the property.

Marek also testified that his father rented Parcel B to the Tiedes with the understanding that the lease agreement included the disputed triangle, but he admitted on cross-examination that he never saw the lease agreement.

*Hanson's Use of the Disputed Triangle*

Hanson purchased Parcel B in 2008 from the Mareks as an investment property and immediately began renting the property to the Tiedes. At trial, Hanson testified that he believed he owned the disputed triangle during the time that he owned Parcel B because aerial maps and a drive around the property indicated that the disputed triangle "had been farmed along with [Parcel B] for many years." Hanson admitted that he knew that the legal

description of Parcel B was wholly in section 7 and that the disputed triangle was in section 6, but he nevertheless held out the disputed triangle as his own until he sold Parcel B.

*The Tiedes' Use of the Disputed Triangle*

The Tiedes farmed the disputed triangle from 1994 until 2010. During this time, the Tiedes were renting Parcel A from the Washas and Parcel B from the Mareks and then Hanson. The Tiedes continued renting Parcel A from the Washas until 2021, when they purchased the property.

In 2011, after Sullivan purchased Parcel B, the Tiedes stopped farming the disputed triangle even though it was located on Parcel A. At trial, Dale Tiede testified that he did not farm the disputed triangle in 2011 because, by the time he was ready to plant the property, Sullivan had already planted it. Tiede testified that he conveyed this information to Washa and that he believed Washa "was going to look into it and take care of the matter." To Tiede's knowledge, Washa never followed up with Sullivan. Tiede did not personally take any action against Sullivan because he did not believe it was his place to do so.

In the fall of 2021, after purchasing Parcel A from the Washas, the Tiedes harvested the soybean crop that Sullivan planted in the disputed triangle the previous spring. The Tiedes also planted and harvested the disputed triangle in 2022.

*Sullivan's Use of the Disputed Triangle*

Sullivan farmed the disputed triangle from 2011 to 2021 and reported the crops he harvested from the property on his FSA reports. At trial, Sullivan testified that he farmed the disputed triangle because he believed it was part of Parcel B, which he purchased from Hanson in 2011. He based this belief on his view that the previous owners "held it out" as

6

their own and on his review of FSA maps, which included the disputed triangle. But Sullivan admitted that he did not walk the property line with Hanson before he purchased Parcel B and that Hanson did not make any representations about what Parcel B included, apart from the property description in the deed. Sullivan also acknowledged that the FSA maps included section lines for Parcels A and B and their designations. Lastly, Sullivan testified that he did not receive permission from Washa to farm the disputed triangle from 2011 to 2021 and that he had never paid taxes on the property.

In the spring of 2021, Sullivan planted soybeans on the disputed triangle, but the Tiedes harvested that crop. Sullivan has not farmed the disputed triangle since then.

*Drain Tile under the Disputed Triangle*

Sometime before 1980, the Mareks installed drain tile underneath the northwest corner of Parcel B and the southwest corner of Parcel A, including under the disputed triangle, pursuant to an informal agreement with a neighboring landowner. The agreement allowed the Mareks to install drain tile so that water could flow northwest from the Mareks' property to the neighboring landowner's property by way of the disputed triangle. In 2011, after purchasing Parcel B, Sullivan repaired some of this drain tile, a portion of which extended into the disputed triangle. In 2018, Sullivan replaced 20 feet of this drain tile with new drain tile. And in 2020, Sullivan installed new drain tile throughout the disputed triangle. The drain-tile specialist who performed the work in 2020 testified that Sullivan told him that the disputed triangle is "an area that is kind of in dispute" but that it "went with [Parcel B] all the time." The specialist raised concerns about installing drain tile on

7

disputed property but received reassurances from Sullivan that he could "go ahead and put it in."

At trial, Marek testified that the original drain tile was installed shortly after his father purchased the property in 1968. Hanson testified that he was not aware of any drain tile when he owned Parcel B, and the Tiedes testified that they were not aware of the drain tile under the disputed triangle at the time they rented and farmed Parcel B and the disputed triangle. Sullivan testified that neither the Washas nor the Tiedes objected to the presence of the drain tile on the disputed triangle until this litigation.

*Litigation Regarding the Disputed Triangle*

In June 2021, after purchasing Parcel A, the Tiedes sent Sullivan a letter asking him to stop planting and harvesting crops in the disputed triangle. Sullivan denied the Tiedes' request, asserting that he owned the disputed triangle by adverse possession.

In September 2021, the Tiedes filed an unsigned complaint seeking to quiet title to the disputed triangle. In July 2022, the Tiedes filed a signed amended complaint seeking the same relief. Sullivan answered the Tiedes' signed complaint and raised four counterclaims: adverse possession of the disputed triangle, prescriptive easement for the use of drain tile under the disputed triangle, conversion for the value of the crops that Sullivan planted and the Tiedes harvested, and nuisance.

In February 2023, the district court held a court trial on the matter. In a subsequent order, the district court granted the Tiedes' request to quiet title and denied Sullivan's claims of adverse possession, prescriptive easement, conversion, and nuisance. The district court denied Sullivan's adverse-possession claim based on its conclusion that Sullivan did

8

not possess the disputed triangle for the statutory period; his possession was not continuous, exclusive, or hostile; and he did not pay taxes on the disputed triangle, as required by Minnesota law. Accordingly, the district court concluded that Sullivan had trespassed on the Tiedes' property and therefore was not entitled to damages for conversion of his crops. The district court denied Sullivan's prescriptive-easement claim based on its conclusion that Sullivan had abandoned the claim with regard to the older drain tile by failing to comply with the Marketable Title Act (MTA), Minn. Stat. § 541.023 (2022), and had not satisfied the statutory period for the claim with regard to the newer drain tile. Lastly, the district court denied Sullivan's nuisance claim for failure to prosecute.

Sullivan appeals.[2]

## DECISION

Sullivan argues that the district court erred by concluding that Sullivan (1) did not acquire title to the disputed property by adverse possession, (2) did not have a prescriptive easement for drainage on the disputed property, and (3) was not entitled to damages for conversion. We address each issue in turn.

## I. The district court did not err by denying Sullivan's adverse-possession claim to the disputed property.

Sullivan contends that the district court erred by concluding that Sullivan did not acquire title to the disputed property by adverse possession because Sullivan satisfied the elements of adverse possession and was not barred from bringing his adverse-possession claim despite his failure to pay taxes on the disputed property. We are not persuaded.

_____

[2] Sullivan does not appeal the district court's denial of his nuisance claim.

"To succeed on a claim of adverse possession, an adverse claimant must show that [their] possession was actual, open, continuous, hostile, and exclusive for 15 years." *St. Paul Park Refin. Co. v. Domeier*, 950 N.W.2d 547, 550 (Minn. 2020) (quotation omitted); *see also* Minn. Stat. § 541.02 (2022) (providing that an adverse claimant must have possession for at least 15 years to maintain a claim). The adverse claimant bears the burden of proving each of these elements by clear and convincing evidence. *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003). "Evidence tending to establish adverse possession must be strictly construed, 'without resort to any inference or presumption in favor of the [adverse claimant], but with the indulgence of every presumption against him.'" *Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App. 2002) (quoting *Village of Newport v. Taylor*, 30 N.W.2d 588, 591 (Minn. 1948)).

Minnesota Statutes section 541.02 imposes an additional requirement on adverse claimants. Except in cases involving a boundary dispute, an adverse-possession claim will fail under section 541.02 if the adverse claimant has not paid taxes on the disputed property for five consecutive years. *Domeier*, 950 N.W.2d at 550 (citing Minn. Stat. § 541.02). "To qualify as a boundary-line dispute that is exempt from the tax-payment requirement, there must be genuine confusion over the true location of the boundary lines." *Starbeck v. Gibson*, 2 N.W.3d 535, 541 (Minn. App. 2024), *rev. denied* (Minn. Apr. 24, 2024).[3]

---

[3] Neither party cited *Starbeck* in their appellate briefs. On January 8, 2024, the Tiedes submitted a letter to this court providing notice of *Starbeck* and arguing that it supports their contention that Sullivan's "adverse possession claim fails because he failed to pay taxes on the claimed land."

Whether the elements of adverse possession have been satisfied is a question of fact. *Ganje*, 659 N.W.2d at 266; *see also Denman v. Gans*, 607 N.W.2d 788, 793 (Minn. App. 2000) ("[T]he question of adverse possession is for the fact finder, whether it be the jury or the court."), *rev. denied* (Minn. June 27, 2000). But "whether the findings of fact support a district court's conclusions of law and judgment is a question of law, which we review de novo." *Ebenhoh*, 642 N.W.2d at 108.

We review a district court's factual findings for clear error, giving due regard to the district court's ability to assess witness credibility. Minn. R. Civ. P. 52.01. Findings of fact are clearly erroneous if "they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). When applying the clear-error standard, "we view the evidence in a light favorable to the findings" and do not reweigh or reconcile conflicting evidence. *Id.* at 221-22. "We will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 221 (quotation omitted).

The district court found that Sullivan's possession of the disputed property was not continuous, hostile, or exclusive for the 15-year statutory period and that Sullivan's adverse-possession claim was barred by the tax-payment requirement under section 541.02.[4] For the reasons set forth below, we agree that Sullivan has not met the

---

[4] The district court concluded that Sullivan failed to prove continuous, exclusive, and hostile possession without addressing whether Sullivan proved actual possession. We therefore assume without deciding that Sullivan proved actual possession.

necessary criteria for establishing an adverse-possession claim. We therefore affirm the district court's decision on Sullivan's adverse-possession claim without reaching the issue of whether Sullivan's claim fails under section 541.02.

### A.   Continuity

To establish continuous possession, the adverse claimant must exercise ongoing dominion over the property for the statutory period of 15 years. Minn. Stat. § 541.02; *see also Romans v. Nadler*, 14 N.W.2d 482, 485 (Minn. 1944). What constitutes "continuous possession" depends on the purposes of the claimed property, although an adverse claimant's use and occupancy of the property cannot be so sporadic that the adverse claimant resembles a trespasser more than a landowner. *Romans*, 14 N.W.2d at 485.

"The possession of successive occupants, if there is privity between them, may be tacked to make adverse possession for the requisite period." *Ebenhoh*, 642 N.W.2d at 109 (quoting *Fredericksen v. Henke*, 209 N.W. 257, 259 (Minn. 1926)). "Possession through descent or by transfer of title or possession is in privity." *Fredericksen*, 209 N.W. at 259. "The possession of a tenant is, as to third parties, the possession of the landlord." *Ebenhoh*, 642 N.W.2d at 109 (quoting *Kelley v. Green*, 170 N.W. 922, 923 (Minn. 1919)); *see also Sherin v. Brackett*, 30 N.W. 551, 552 (Minn. 1886) ("[T]he tenant's possession is that of his landlord.").

The district court found that Sullivan did not establish continuous possession of the disputed property for the statutory period because the Tiedes' possession of the property from 1994 to 2010 interrupted that of the Mareks and Sullivan, thereby preventing Sullivan from tacking his possession of the property onto the Mareks' possession of the property.

The district court's finding that Sullivan did not establish continuous possession of the disputed property for the statutory period is not clearly erroneous. The record shows that the Tiedes rented and farmed Parcels A and B, including the disputed property, from 1994 to 2010. The record also shows that the Tiedes' lease agreements with the Mareks and Hanson refer to property that is entirely within section 7, while the Tiedes' lease agreements with the Washas refer to property that is entirely within section 6. And it is uncontested that the disputed property is entirely within section 6. Additionally, Dale Tiede testified at trial that he objected to Sullivan's farming of the disputed property from 2011 to 2021 but that he did not take action against Sullivan because he did not think it was his place to do so as the Washas' tenant. These facts demonstrate that the Tiedes farmed the disputed property from 1994 to 2010 as tenants of *Washa*, not as tenants of the Mareks and Hanson. Accordingly, Sullivan is not entitled to tack his possession of the property onto that of the Mareks and Hanson. *See Ebenhoh*, 642 N.W.2d at 109. For this reason, we conclude that the district court did not clearly err by finding that Sullivan did not establish continuous possession of the disputed property for the statutory period.[5]

## B. Exclusivity

To establish exclusive possession, an adverse claimant must "take[] possession of the land as if it were [their] own with the intention of using it to the exclusion of others," notwithstanding the "intermittent entries" of others. *See id.* at 108-09.

---

[5] To the extent that Sullivan challenges the district court's decision to credit Dale Tiede's testimony, we defer to the district court's credibility determination. *See* Minn. R. Civ. P. 52.01; *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

The district court found that Sullivan did not establish exclusive possession of the disputed property for the statutory period for the same reasons that Sullivan did not establish continuous possession: because the Tiedes' possession of the disputed property interrupted that of the Mareks and Sullivan.

The same facts that support the district court's finding on continuous possession support its finding on exclusive possession. Taken together, these facts show that the Tiedes' possessed the disputed property on behalf of the Washas from 1994 to 2010. Thus, Sullivan's possession of the disputed property cannot be tacked onto that of the Mareks or Hanson, and Sullivan cannot show that he exclusively possessed the property for the 15-year statutory period beginning in 2006 and ending in 2021, when Sullivan stopped farming the property. We therefore conclude that the district court did not clearly err by finding that Sullivan did not establish exclusive possession of the disputed property for the statutory period.

### C. Hostility

To establish hostile possession, the adverse claimant must "enter[] and tak[e] possession of the land as if it were [their own] and own[] it with the intention of excluding all others." *Ganje*, 659 N.W.2d at 268. Hostile possession "does not imply any type of personal animosity or physical overt acts against the record owner." *Id.* (quotation omitted). It is a flexible concept, "determined by examining the character of the possession and the acts of ownership of the occupant." *Id.* (quoting *Ebenhoh*, 642 N.W.2d at 110-11).

The district court found that Sullivan did not establish hostile possession of the disputed property for the statutory period because the Tiedes' possession of the property was not hostile to the Washas and interrupted the possession of the Mareks and Sullivan.

Again, the same facts that support the district court's findings on continuous and exclusive possession support the district court's finding on hostile possession. These facts show that the Tiedes farmed the disputed property as the Washas' tenants. Accordingly, the Tiedes' possession of the disputed property was not hostile to Washa, and Sullivan cannot establish hostile possession of the property for the statutory period. *See Ebenhoh*, 642 N.W.2d at 110-11; *Ganje*, 659 N.W.2d at 268. We thus conclude that the district court did not clearly err by finding that Sullivan did not establish hostile possession of the disputed property for the statutory period.

Because the record supports the district court's findings on the relevant elements of adverse possession, we conclude that the district court did not err by determining that Sullivan did not possess the disputed property by adverse possession. *See Domeier*, 950 N.W.2d at 550 (providing that an adverse claimant must satisfy every element of an adverse-possession claim to prevail). We therefore do not need to reach the issue of whether Sullivan's adverse-possession claim fails under section 541.02 due to his failure to pay taxes on the disputed property, and we decline to address this issue.

## II. The district court did not err by denying Sullivan's prescriptive-easement claim to the disputed property.

Sullivan next argues that the district court erred by concluding that he "did not have a right of access or easement for drainage over the dispute[d] triangle" because the district

15

court improperly invoked and misapplied the MTA.[6]  In the alternative, Sullivan contends that he is entitled to relief under the reasonable-use doctrine.  For the reasons discussed below, we are not persuaded.

> **A.  The district court did not abuse its discretion by concluding that Sullivan abandoned his prescriptive-easement claim with regard to the old drain tile.**

Sullivan asserts that the district court abused its discretion by concluding, based on the MTA, that he abandoned his prescriptive-easement claim to the old drain tile.  We disagree.

The MTA provides that any claim of title to real estate that is not recorded within 40 years is presumed to be abandoned.  Minn. Stat. § 541.023, subds. 1-2, 5.  "Easements are among the property interests that can be eliminated under the MTA." *Sampair v. Village of Birchwood*, 784 N.W.2d 65, 69 (Minn. 2010).  But the MTA contains an exception for persons in possession of certain real estate interests, including easements.

---

[6] Sullivan argues that the district court erred by relying on the MTA because whether the MTA applies to this case "was raised for the first time in the [district court's order]" and was not addressed by either party below.  To support his argument, Sullivan cites *Roby v. State*, which provides that appellate courts "generally will not decide issues which were not raised before the district court."  547 N.W.2d 354, 357 (Minn. 1996).  But *Roby* concerned an issue that was not decided by the district court, whereas here the district court did address the applicability of the MTA.  In addition, *Roby* also states that appellate courts "may deviate from this rule when the interests of justice require consideration of such issues and *doing so would not unfairly surprise a party to the appeal*." *Id.* (emphasis added).  Sullivan has not established that addressing whether the MTA bars Sullivan's prescriptive-easement claim unfairly surprised either party on appeal.  To the contrary, the district court decided the issue, and both parties have argued this issue in their appellate briefs and during oral argument.  We therefore conclude that *Roby* does not preclude us from considering the district court's decision on Sullivan's prescriptive-easement claim. *See id.*

16

Minn. Stat. § 541.023, subd. 6; *see also Sampair*, 784 N.W.2d at 69.  To be entitled to the possession exception, the party invoking the exception must show that they were in possession of the property interest within 40 years of when the interest was created and that their possession continued through the filing of the relevant action regarding ownership.  *Sampair*, 784 N.W.2d at 73.  In addition, when a party claims an easement, the use of the property must be "sufficient to put a prudent person on notice of the asserted interest in the land, giving due regard to the nature of the easement at issue."  *Id.* at 70.  "Actual possession of real property is notice to all the world of the title and rights of the person so in possession and also of all facts connected therewith which reasonable inquiry would have developed."  *Claflin v. Com. State Bank of Two Harbors*, 487 N.W.2d 242, 248 (Minn. App. 1992), *rev. denied* (Minn. Aug. 4, 1992).  "[K]nowledge of the existence of the easement is a factor to be considered in determining possession."  *Township of Sterling v. Griffin*, 244 N.W.2d 129, 134 (Minn. 1976).  The party invoking the possession exception bears the burden of proving that it applies.  *See Sampair*, 784 N.W.2d at 74.

The issue of whether Sullivan abandoned his prescriptive-easement claim under the MTA presents a mixed question of fact and law.  "When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard."  *In re Est. of Sullivan*, 868 N.W.2d 750, 754 (Minn. App. 2015) (quotation omitted).  "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against

17

logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

The district court concluded that Sullivan abandoned his prescriptive-easement claim with regard to the old drain tile because he failed to record an easement for the old drain tile within 40 years of its installation and because the possession exception does not apply. Sullivan does not dispute that he failed to record an easement for the old drain tile within the 40-year statutory time period set forth in the MTA. Instead, Sullivan summarily argues that the possession exception applies because his use of the disputed property for drainage purposes was sufficient to put a prudent person on notice of his interest in the property. We are not persuaded.

The record supports the district court's conclusion that the possession exception does not apply here because Sullivan's use of the disputed property would not have put a prudent person on notice of his alleged prescriptive-easement interest in the old drain tile. At trial, Marek testified that the old drain tile was installed shortly after his father purchased Parcel B in 1968. But Hanson and Tiede testified that they were not aware of the old drain tile when they owned and farmed the disputed property, respectively, which spanned the years of 1994 to 2011. And, while Sullivan testified that he has repaired the old drain tile twice and added new drain tile three times since he purchased Parcel B in 2011, there is no evidence that his repairs were known to the Tiedes. These facts, coupled with the fact that the drain tile was not visible to the naked eye, support the district court's conclusion that Sullivan's use of the disputed property for drainage purposes would not have put a prudent person (including the owners of the disputed property) on notice of Sullivan's alleged

18

prescriptive easement involving the old drain tile.[7]  We therefore conclude that the district court did not abuse its discretion by determining that Sullivan abandoned his claimed prescriptive-easement interest as it pertains to the old drain tile.  *See Sampair*, 784 N.W.2d at 71.

> **B.** **The district court did not clearly err by concluding that Sullivan did not satisfy the elements of prescriptive easement with regard to the new drain tile.**

Sullivan contends that the district court erred by concluding that Sullivan did not satisfy the elements of his prescriptive-easement claim with regard to the new drain tile.  In making this argument, Sullivan challenges the district court's factual findings on the elements of prescriptive easement.  We review factual findings for clear error.  *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999).

"A prescriptive easement is based on prior continuous use and grants a right to use the property of another."  *Id.*  The purpose of prescriptive easements is "to encourage the prompt resolution of disputes before evidence is destroyed or relevant events pass out of memory and thereby stabilize long-continued property uses."  *Id.*  The elements of proof required to establish a prescriptive easement are the same as those necessary to establish adverse possession, "subject to such differences as are necessarily inherent in the application of the rules in such cases."  *Id.* at 657 (quotation omitted).  A party seeking to establish a prescriptive easement must show that its use of the land "was hostile, actual,

---

[7] To the extent that Sullivan challenges the district court's decision to credit the testimony of Hanson and Tiede, we defer to the district court's credibility determination.  *See* Minn. R. Civ. P. 52.01; *Sefkow*, 427 N.W.2d at 210.

open, continuous, and exclusive" for the prescriptive 15-year period. *McCuen v. McCarvel*, 263 N.W.2d 64, 65 (Minn. 1978). As in adverse-possession cases, each element must be proven by clear and convincing evidence. *Rogers*, 603 N.W.2d at 657.

The district court found that Sullivan was not entitled to a prescriptive easement in the disputed triangle with regard to the new drain tile because he could not prove that the new drain tile was operational before 2011, when Sullivan purchased Parcel B, and therefore could not establish that he possessed the prescriptive easement for the 15-year statutory period.

Sullivan appears to reject the district court's distinction between the old and new drain tiles and instead asserts that he satisfied the 15-year statutory period because the original drain tile was installed before 1980 and has been used continuously ever since. We agree with the district court.

As the district court correctly noted, Sullivan presented no affirmative evidence that the drain tile was in working order during the time that the Tiedes farmed the disputed property, and the testimony of Tiede and Hanson—which the district court credited—suggests the opposite. We thus conclude that the district court did not clearly err by determining that Sullivan failed to meet his burden of proving the elements of prescriptive easement with respect to the new drain tile.

> **C.** **Whether Sullivan is entitled to access the disputed property for drainage purposes under the reasonable-use doctrine is not properly before this court.**

In the alternative, Sullivan argues that he is entitled to access the disputed property for drainage purposes under the reasonable-use doctrine. Sullivan did not raise this

argument before the district court, *and* the district court did not consider it in its order. Therefore, we decline to consider this issue. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." (quotation omitted)).

**III.** **The district court did not err by denying Sullivan's conversion claim and his related request for damages.**

Finally, Sullivan challenges the district court's denial of his conversion claim and his related request for damages. On appeal from the denial of a conversion claim, we review the district court's decision to determine "whether the evidence is sufficient to support the [district] court's findings and whether the findings support its conclusions of law." *See Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 418 (Minn. App. 1990).

Sullivan contends that the district court erred by denying his conversion claim because he owns the disputed property by adverse possession and therefore is entitled to compensation for the soybean crop that he planted but the Tiedes harvested. The Tiedes assert that the district court properly denied Sullivan's conversion claim because Sullivan does not own the property by adverse possession and therefore was trespassing on the Tiedes' property when he planted the crop. We agree with the Tiedes.

Without establishing title to the property through adverse possession, Sullivan's conversion claim fails. Conversion is "an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights

of the person entitled to the use, possession or ownership of the property." *Dain Bosworth Inc. v. Goetze*, 374 N.W.2d 467, 471 (Minn. App. 1985) (citing *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). "Without exception it has been held that an owner of land obtaining possession either by means of legal process or by other means is entitled to whatever crops are at the time growing on the land." *Roehrs v. Thompson*, 240 N.W. 111, 113 (Minn. 1932) (quotation omitted). Thus, to be entitled to damages for conversion, Sullivan needed to establish that he had the right "to the use, possession or ownership of the [disputed] property" and that the Tiedes interfered with this right by harvesting the 2021 soybean crop. *Dain Bosworth Inc.*, 374 N.W.2d at 471; *see Roehrs*, 240 N.W. at 113. Sullivan sought to establish his right to use, possess, or own the disputed property by adverse possession but, as discussed above, Sullivan failed to satisfy the elements of this claim. Thus, Sullivan did not have the right to plant or harvest the crops on the disputed triangle in 2021 and was not entitled to damages for the conversion of those crops. *See Roehrs*, 240 N.W. at 113. We therefore conclude that the district court did not err by denying Sullivan's conversion claim. *See Dain Bosworth Inc.*, 374 N.W.2d at 471.

**Affirmed.**